# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CT-01260-SCT

*ZACHARIA CHASE DAMBRELL*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

DATE OF JUDGMENT:                    08/17/2001
TRIAL JUDGE:                         HON. DALE HARKEY
COURT FROM WHICH APPEALED:           JACKSON COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:             PHILLIP BROADHEAD
                                     ROSS PARKER SIMONS
ATTORNEY FOR APPELLEE:               OFFICE OF THE ATTORNEY GENERAL
                                     BY: SCOTT STUART
DISTRICT ATTORNEY:                   KEITH MILLER
NATURE OF THE CASE:                  CRIMINAL - FELONY
DISPOSITION:                         AFFIRMED - 03/03/2005
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

EN BANC.

EASLEY, JUSTICE, FOR THE COURT:

## PROCEDURAL HISTORY

¶1.     Zacharia Chase Dambrell (Dambrell) was convicted of attempted armed robbery by a jury in the Circuit Court of Jackson County, Mississippi, and sentenced to serve a term of six years in the custody of the Mississippi Department of Corrections.   Dambrell appealed his conviction, and it was assigned to the Court of Appeals.   A divided Court of Appeals reversed and rendered the case.   ***Dambrell v. State,*** 2004 WL 1154451 (Miss. Ct. App. 2004).   The

Court of Appeals denied the State's motion for rehearing, and the State then filed a petition for a writ of certiorari which this Court granted. 883 So. 2d 1180 (Miss. 2004).

**FACTS**

¶2.    On May 9, 2000, Dambrell smoked marijuana and took LSD while spending time with three friends.  Much later that evening and into the morning of May 10, 2000, Dambrell took some more LSD and talked about robbing a store for cigarettes and money.  One of Dambrell's friends gave him a knife, a rag and a mask.  He wrapped the knife in the towel and placed it in his belt and tied the shirt around his neck as he walked the quarter mile to the store.  As he neared the store, Dambrell saw someone outside of the store, and he went behind a dumpster.  Owen Waters, the E-Z store clerk, was frightened when he saw a figure by the store dumpster at 2:00 a.m.  Waters reentered the store and called the police. Prior to entering the store, Dambrell placed the mask on his face.

¶3.    As soon as the police department answered Waters's call, he saw someone enter the store.  Dambrell had his face covered up to his nose with what looked like a white T-shirt.  The T-shirt was later found in the dumpster.  Dambrell had a towel wrapped around his hand.  Dambrell entered the store and saw someone on the telephone.  He threw down the towel and knife and left the store.  When Dambrell threw the towel across the counter a butcher knife fell out of the towel.  Waters was sure that Dambrell heard him tell the police that he was being robbed.  Dambrell denied that he heard the clerk say anything. Waters stated that he saw the knife when Dambrell threw down the towel and knife.  Nevertheless, when Waters saw Dambrell enter with the towel, Waters assumed that Dambrell had a weapon in his hand.

2

¶4. Dambrell was indicted pursuant to Miss. Code Ann. § 97-3-79 and convicted in the Jackson County Circuit Court of attempted armed robbery and sentenced to six years in the custody of Mississippi Department of Corrections. The Court of Appeals reversed and rendered the conviction finding that the State of Mississippi failed to prove an element of the crime, that being, the exhibition of a deadly weapon, a knife, to Waters and that as a result of the lack of exhibition of the weapon, Waters was not placed in fear of immediate injury to his person.

## DISCUSSION

¶5. The issue before this Court is whether Dambrell "exhibited" a deadly weapon pursuant to the armed and attempted armed robbery statute of Miss. Code Ann. § 97-3-79

which states:

> Every person who shall feloniously take or **attempt to** take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such **person in fear of immediate injury to his person** by the exhibition of a deadly weapon shall be guilty of robbery and, upon conviction, shall be imprisoned for life in the state penitentiary if the penalty is so fixed by the jury; and in cases where the jury fails to fix the penalty at imprisonment for life in the state penitentiary the court shall fix the penalty at imprisonment in the state penitentiary for any term not less than three (3) years.

(emphasis added).

¶6. After careful consideration, this Court overrules *Gibby v. State*, 744 So.2d 245 (Miss. 1999). We find that when a defendant makes an overt act and a reasonable person would believe that a deadly weapon is present, there is no requirement that a victim must actually see the deadly weapon in order to convict pursuant to Miss. Code Ann. § 97-3-79. Therefore, a

3

victim is not required to have "definite knowledge" of a deadly weapon in the sense that the weapon must actually be seen by the victim's own eyes.

¶7.     The Court of Appeals held:

> In discussing Dambrell's motion for a directed verdict, the trial judge noted that **the weapon was not exhibited because Waters never saw the weapon until Dambrell had disposed of it.**
>
> The State chose to track the language of Mississippi Code Annotated Section 97-3-79 in its indictment. By doing so, the State obligated itself to prove that Dambrell exhibited a deadly weapon to Waters, and that as a result of that exhibition, Waters was placed in fear of immediate injury to his person. The State was obligated to establish that any fear of Waters flowed directly from, and was occasioned by his awareness of the existence of the weapon. Mere assumption that a deadly weapon exists is not enough, the victim must have definitive knowledge that such deadly weapon does in fact exist to support a conviction under a standard of reasonable doubt. *Gibby v. State*, 744 So.2d 244, 245(¶ 8) (Miss.1999).
>
> Where the State has failed to establish that a weapon was exhibited, then of necessity it has also failed to establish that the victim was placed in fear of immediate injury to his person by the exhibition of a weapon. Our review of the record leads to the unavoidable conclusion that it does not contain proof of every essential fact alleged in the indictment. Therefore, it contains insufficient evidence upon which a reasonable person might have found Dambrell guilty pursuant to the indictment against him. Where the State has failed to prove each and every essential element of the indictment as drafted we are compelled to reverse and render the conviction. *Lee v. State*, 756 So.2d 744, 748 (¶ 11) (Miss.1999). The State failed to prove that Waters was placed in immediate fear by exhibition of a deadly weapon, accordingly this Court reverses and renders Dambrell's conviction.

*Dambrell*, 2004 WL 1154451 (¶¶ 13-15) (emphasis added).

¶8.     At the end of Waters's cross-examination, he testified:

| THE COURT: | I have a question. Mr. Waters, you indicated that when he [Dambrell] walked in he had the towel and-- |
|---|---|
| WATERS: | The towel, he had the knife wrapped up in the towel, so I never did actually see the knife until after he slung it. |

4

| | |
|---|---|
| THE COURT: | So he came in and he had the towel and-- |
| WATERS: | Wrapped around the knife. |
| THE COURT: | That's all? |
| WATERS: | Yes, sir. |
| THE COURT: | Could you tell what it was? |
| WATERS: | Not at that point, no, sir. I didn't know until he slung it. That's when I knew he had a knife. |
| THE COURT: | So when he slung it the towel and the knife went off in the same direction? |
| WATERS: | Yes, sir. |
| THE COURT: | That's when you realized he had a weapon? |
| WATERS: | Yes, sir. |

¶9.     On redirect examination Waters stated:

| | |
|---|---|
| **STATE:** | **Mr. Waters, when the Defendant walked, this is in response to the Judge's question, the Defendant walked in with the towel, was the knife wrapped up in the towel like this?** |
| **WATERS:** | **Yes, sir.  It was all wrapped up where you couldn't see it.** |
| **STATE:** | **Okay.  What did you - - what went through your mind when you saw this?** |
| **WATERS:** | **I assumed he had a weapon in his hand is what I assumed.** |
| STATE: | Okay.  So did the fact that it was wrapped in a towel as opposed to being out like this, did that change your fear factor? |
| WATERS: | No, uh uh (indicating negative). |
| STATE: | So you were just as afraid - - |
| WATERS: | Well, I knew he had a weapon that's what, that's what - - |
| **STATE:** | **That meant weapon to you, did it not?** |
| **WATERS:** | **Yes, sir.** |

(emphasis added).

¶10.    On recross examination, Waters further stated:

| | |
|---|---|
| DEFENSE: | Okay.  He comes in the door with this towel wrapped around his hand and - - |
| WATERS: | No, he, he had the towel - - his hand - - |

| | |
|---|---|
| **DEFENSE:** | **Something, the towel was out of his hand and it appeared that he had something in the towel?** |
| **WATERS:** | **Right.** |
| **DEFENSE:** | **And you assumed it was a weapon?** |
| **WATERS:** | **Yes, sir.** |
| **DEFENSE:** | **But you couldn't tell what it was?** |
| **WATERS:** | **No, sir.** |
| DEFENSE: | And the first time you actually saw what it was, he was running - - |
| WATERS: | Right. |
| DEFENSE: | - - not walking, but running out the door? |
| WATERS: | Right. |
| DEFENSE: | Then he threw it? |
| WATERS: | Yes, sir. |

(emphasis added).

¶11.    The Court of Appeals relied upon *Gibby v. State*, 744 So.2d 244 (Miss. 1999), for authority to reverse and render the conviction against Dambrell.    The problem with the case insofar as the Court of Appeals determined was that the State failed to prove all elements of the crime.    Specifically, a victim has to have definite knowledge that a deadly weapon actually exists and not just an assumption that a deadly weapon exists in order to uphold a conviction. *Id.* at 245.

¶12.    Here, the Court of Appeals ruled that the State had the duty to prove that Dambrell exhibited a deadly weapon and Waters was placed in fear of immediate injury to his person as a result of the exhibition of the deadly weapon.    Therefore, Waters's fear had to be a result of his awareness of the existence of the deadly weapon.    However, the Court of Appeals ruled that the State failed to establish that a weapon was exhibited and consequently the State failed to establish that Waters was in fear of immediate injury to his person.

6

¶13. The State argues that this case involves an attempted armed robbery, not armed robbery. Since the crime was attempted armed robbery the words "attempt to" precede the other elements of robbery and any element that placed Waters in fear by the exhibition of a deadly weapon. In other words the indictment stated that Dambrell attempted to commit the crime, including attempting to exhibit a deadly weapon. The State further argues that if the Court of Appeals' reasoning is correct, that the State had to prove that Dambrell exhibited a weapon, then the State would have to prove that Dambrell committed the other elements of the crime. The indictment tracked Miss. Code Ann. § 97-3-79 and stated:

ZACH C. DAMBRELL

in Jackson County, Mississippi, on or about May 10, 2000, did willfully, unlawfully and feloniously **attempt to**, steal and carry away from the person and/or the presence of, and against the will of Owen Waters, merchandise, the personal property of Owen Waters of which he was in lawful possession...by putting the said Owen Waters in fear of immediate injury to his person, by the exhibition of a deadly weapon, to-wit: a knife...

(emphasis added). The State contends that to find that the acts or elements had to be actually committed would be contrary to the legislative intent to punish an attempted armed robbery and armed robbery.

¶14. The State distinguishes *Gibby* and relies upon *Edwards v. State*, 500 So.2d 967, 969 (Miss. 1986). In *Gibby*, an automobile salesman went for a demonstration ride with Gibby and another man. *Gibby*, 744 So.2d at 244. While riding, Gibby's friend stopped the vehicle and "Gibby leaned forward and poked something hard through his jacket pocket into [the salesman's] ribs." *Id*. at 244-45. The salesman assumed the object was a gun although he did

7

not see it. *Id*. at 245.  This Court reversed the conviction of armed robbery and remanded for sentencing of the lesser included offense of simple robbery.  *Id*. at 245-46.

¶15.   The State argues that *Gibby* was a completed robbery as opposed to an attempted armed robbery by Dambrell.   In addition, the State contends that the Court in *Gibby* had concerns because the gun was not found.   Here, the State argues that Dambrell testified he had intended to rob the store, had a knife for the robbery, the knife was visible on the video tape and the victim saw Dambrell throw down the knife and towel.

¶16.   In *Edwards*, the defendant was indicted pursuant to Miss. Code Ann. § 97-1-7, which is a general attempt statute and not the attempted armed robbery statute Miss. Code Ann. § 97-3-79. *Edwards*, 500 So.2d at 969.   The State relies upon this case for the proposition that an exhibition of a deadly weapon is not necessary to prove attempted armed robbery when numerous overt acts are proven by the State. *Id*.

¶17.   In *Hughey v. State*, 512 So.2d 4, 6 (Miss. 1987), this Court upheld a conviction of armed robbery where the victim saw an imprint of a gun under Hughey's shirt.   Hughey threatened to shoot victims and told a witness that he had a gun and committed the robbery. *Id*. at 5.  When the police arrested Hughey, he was in possession of a gun. *Id*.

¶18.   In *Clark v. State*, 756 So.2d 730, 731 (Miss. 1999), a cashier saw what appeared to be a knife in Clark's pants pocket.   However, Clark simply grabbed cash when the cashier opened the register. *Id*.   This Court reversed and remanded the case finding that the State failed to prove that Clark exhibited a deadly weapon. *Id*. at 733.   The Court determined that the knife was not the means by which Clark took the cash.   However, this Court further held "[w]hile we do

8

not propose to give absolute meaning or strict definition of the phrase 'by the exhibition of a deadly weapon,' it is clear that it means something more than mere possession." *Id*. at 732.

¶19.     In *Brown v. State*, 859 So.2d 1039, 1040 (Miss. Ct. App. 2003), the defendant walked around a convenience store counter and placed a sharp object against the cashier's side. At this point the cashier did not see the object.   The cashier testified that she never had a good look at the object.   However, when Brown directed the cashier to lift the register, the cashier saw a sharp tool-like object at her side. *Id*. Later, when Brown was arrested, the police found Brown in possession of a "punch-like tool." *Id*. The Court of Appeals distinguished *Gibb*y from the facts in *Brown* finding that the victim in *Brown* saw the sharp instrument before the robbery was completed. *Id*. at 1041.  In *Brown*, the Court of Appeals upheld the conviction of armed robbery. *Id*.

¶20.     In *Blue v. State*, 827 So.2d 721, 724 (Miss. Ct. App. 2002), the Court of Appeals reversed a conviction for armed robbery where Blue covered his hand with a paper bag.   The Court of Appeals held:

> Here, the State presented **no objective evidence that Blue possessed a gun at the time of the robbery**; as such, the conviction for armed robbery must be reversed. According to both Wilson and Sandifer, they did not know whether a gun was within the opaque, paper bag. However, as a matter of precaution, both clerks assumed there was a gun within the paper bag. Clearly, under the reasoning in *Gibby,* these assumptions are not enough to support Blue's conviction of armed robbery. Moreover, Blue neither threatened to shoot the clerks nor made any other assertion indicating that he possessed a gun. Finally, the police officers never recovered a gun.

(emphasis added).

¶21. The above cited case law are all cases of jury convictions for completed armed robberies. In the case sub judice, the jury found Dambrell guilty of armed robbery. Waters saw Dambrell outside and immediately ran inside to call the police. Dambrell entered the store with a mask over his face and a towel wrapped around his arm at 2:00 a.m. Waters testified that he knew that meant that Dambrell had a weapon under the towel. Further, Dambrell testified that he meant to rob the store for money and cigarettes. Waters saw the knife when Dambrell threw it and the towel down as he fled.

¶22. This case is distinguishable from *Gibby*. Even though the act was not completed Dambrell, testified that his intent was to rob the store, he had a knife and discarded the knife at the store. This case is more like *Hughey* where a weapon was not actually seen but the defendant admitted to the robbery. The Court stated that "Hughey had 'what appeared to be a gun', under his shirt, and Mrs. Haney saw 'the prints of a gun' under his shirt, although Hughey 'never took the gun out.'" *Hughey*, 512 So.2d at 5. Hughey threatened to shoot victims, admitted he robbed the store and the police found the weapon on Hughey when he was arrested.

¶23. Here, Dambrell testified that he went to rob the store for money and cigarettes; hid behind a dumpster outside the store when the cashier went outside to check on his suspicious behavior; placed a mask over his face before entering the store; a few moments after entering the store, he cursed, threw down the towel with the butcher's knife in it and fled. Clearly, Dambrell intended to rob the store, had a deadly weapon, threw down the towel and knife that was in his possession and was only thwarted in his attempt to rob the store. Because Dambrell never completed the robbery, the facts are not as detailed as other cases. Nevertheless, the

10

cashier gained possession of the knife once Dambrell discarded it. Therefore, it was clear that Dambrell had a weapon on his person upon entering the store.

¶24. The case sub judice is distinguished from *Clark*. In *Clark*, the Court determined that mere possession of a knife in a pants pocket was not sufficient proof that Clark exhibited a deadly weapon. Part of the ruling was based upon the fact that Clark never used the knife in the robbery, but he simply grabbed money from the cash register with his hands when the cashier opened the drawer. The only difference between the facts that convicted Hughey and reversed the case in favor of Clark was that Hughey threatened to harm the victims while Clark said nothing.

¶25. Here, Dambrell walked to the store and hid behind a dumpster outside the store when he saw Waters come outside. Prior to entering the store, Dambrell pulled a mask over his face, presumably to obscure his identity and had a towel wrapped around the knife in his hand. Therefore, a masked Dambrell had the knife poised or ready to be used in the attempted robbery. Clark's actions were unlike Dambrell's because Clark did not have a weapon poised for use, and he also did not use the knife as a means to rob the store.

¶26. It may be argued that this case is like *Blue* where the defendant placed a paper bag over his arm and the Court of Appeals reversed the armed robbery conviction. However, Dambrell threw down the towel with the knife, admitted to going to the store to rob, placed a mask over his face, and the cashier gained possession of the knife when Dambrell discarded it. In *Blue,* and incidently in *Gibby,* the defendant actually stole money and the police **never** found any weapon. Again, in Dambrell's case, he admitted to going to the store to rob it and discarded his knife and towel at the store so clearly he had the intent to rob the store and he was in

possession of the knife, a deadly weapon, upon entering the store. Further, Dambrell's weapon was recovered at the scene of the crime by the cashier unlike *Blue* and *Gibby* where no weapons were recovered. The failure to recover a weapon in these two cases appeared to be a consideration of the courts.

¶27. The case sub judice is further distinguished from all the above referenced cases. None of theses cases had a defendant that placed a disguise over his face. We find that wearing a mask is a critical distinction in this case and the analysis. A disguise immediately places people in fear of harm and as in this case the fact that Dambrell had his hand covered in a towel would further insight fear. Dambrell is the only defendant that placed a mask, a white T-shirt, over his face before entering the convenient store to rob the store. Arguably this fact gives credence to Waters's fear that Dambrell's arm wrapped in a towel meant a weapon.

¶28. By contrast, the victim in *Hughey* never saw the weapon, only the outline of the weapon under his shirt. Further, the weapon in *Hughey* was never retrieved from under his clothes, although he did threaten to shoot the victim. Despite these facts the Court upheld the armed robbery conviction in *Hughey*. The key difference between the case sub judice and *Hughey* is that Hughey threatened to shoot the victims and the weapon may have been more visible under his shirt, but he never handled the gun. In contrast, while Dambrell never threatened anyone due to his almost immediate flight and his knife was less visible than Hughey's gun, Dambrell entered the store with a mask and actually had the knife in his hand ready for use if needed.

¶29. Thus, this State's appellate courts have various interpretations on the issue. On the one hand some cases strictly apply an exhibition of a deadly weapon in upholding an armed robbery

conviction, such as *Gibby* and *Blue*. On the other hand, the Mississippi courts have applied a less stringent standard and upheld armed robbery convictions in cases such as *Hughey*, where an imprint of a gun was seen under a shirt, the gun was not displayed to get the money, although shooting was threatened, and the defendant did not have the weapon in his hand ready for use. In addition, there have been some in between cases such as *Clark*, where armed robbery was not upheld because the defendant only had the handle of a knife in his pocket and the knife was not the means by which the robbery was committed. In *Brown*, this Court upheld an armed robbery conviction even though the victim felt a sharp object by her side and only had a quick glance of a "tool like" object upon lifting the cash drawer at Brown's instruction.

¶30. The case sub judice is most similar to *Hughey*. In neither case did the victim actually see the weapon, at best the victim in *Hughey* saw the outline of a gun under a shirt. Here, Waters saw a covered hand with a knife in it ready for use, a masked person enter the store, and he retrieved the knife when Dambrell discarded it. It is true that Dambrell did not threaten to harm any victim like in *Hughey*. However, Dambrell, unlike *Hughey*, had the knife in his hand and never completed the robbery but abruptly fled.

¶31. The case is further distinguished from *Hughey* and *Clark*. Hughey and Clark never actually used a weapon as a means to rob the victim. At best, the victims were aware that each criminal had what appeared to be weapons on their bodies. Again, Hughey threatened to shoot the victim while Clark never said anything, but neither criminal handled, used, or had a weapon poised to rob the victim, nor did either man have a disguise. Clearly, the facts in Dambrell are different but no less compelling than *Hughey*. Dambrell had a mask on his face, indicating to

13

anyone that a person had the intent to harm another, a towel wrapped around his hand, he discarded the knife when he fled and he admitted that he intended to rob the store for money and cigarettes.

¶32.    Today we overrule the language in *Gibby v. State* that states that a victim must have definite knowledge that a deadly weapon exists to uphold a conviction. *Gibby*, 744 So.2d at 245.   We find that when a defendant makes an overt act and a reasonable person would believe that a deadly weapon was present, then the intent of the statute has been met   for conviction purposes.   In other words, if a defendant makes an overt act, a victim does not have to actually see a deadly weapon.   So long as the victim reasonably believes that the defendant had a deadly weapon and the defendant makes an overt act the statute is satisfied.   In this case, Waters saw Dambrell outside.   Waters was frightened and immediately called the police.   When Dambrell entered the store, Waters saw Dambrell's hand covered in a towel.   Waters testified that he was afraid and when he saw Dambrell's wrapped hand that meant "weapon" to him.

¶33.    Further, we find that a strict interpretation of the statute as requiring that the victim has to see the actual weapon would give license to future armed robbers to simply cover their weapon in order to avoid a conviction of armed robbery.   In this instance the jury heard the evidence and the testimony of Waters, the victim, that a towel meant a weapon to him coupled with Dambrell's testimony that he intended to rob the store and convicted him. Waters was placed in fear and immediately called the police. This was a jury question, and the jury resolved it against Dambrell.

¶34.    Accordingly, we find that the Court of Appeals erred in reversing the trial court's judgment.

14

## CONCLUSION

¶35. We find that the Court of Appeals erred by reversing and rendering Dambrell's conviction for armed robbery. Therefore, the judgment of the Court of Appeals is reversed, and the judgment of the Jackson County Circuit Court is affirmed.

¶36. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. CONVICTION OF ARMED ROBBERY AND SENTENCE SIX (6) YEARS, WITH THE LAST THREE (3) YEARS POST RELEASE, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, TOGETHER WITH PAYMENT OF A FINE OF $1,000.00, ALL COSTS AND ATTORNEY FEES, AFFIRMED.**

**SMITH, C.J., WALLER, P.J., CARLSON AND RANDOLPH, JJ., CONCUR. COBB, P.J., CONCURS IN RESULT ONLY. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DICKINSON, J., DISSENTS WITH SEPARATE OPINION. DIAZ, J., NOT PARTICIPATING.**

**DICKINSON, JUSTICE, DISSENTING:**

¶37. Because the majority fails to strictly construe the criminal statute at issue, I respectfully dissent.

¶38. The responsibility of enacting statutes which define criminal conduct lies exclusively with the Legislature. This Court has recognized, and rightly so, the well-settled rule that criminal statutes are strictly construed in favor of the accused. ***Conley v. State*** 790 So.2d 773, 809 (Miss. 2001). Furthermore, this Court cannot read words out of the statute which are obviously contained there. ***Id.*** I submit that this Court is similarly prohibited from injecting words into a statute which are not provided by the Legislature.

¶39. Dambrell was convicted of attempted armed robbery. Our armed robbery statute states, in pertinent part: "Every person who shall feloniously take or attempt to take . . . the personal

15

property of another . . . by putting such person in fear of immediate injury to his person by **the exhibition of** a deadly weapon . . . shall be guilty of robbery. . . ."

Miss. Code Ann. § 97-3-79 (Rev. 2000) (emphasis added).

¶40.   The majority would like the statute to include in the definition of armed robbery acts which lead a person to believe that the perpetrator is in possession of a deadly weapon.   So would I.   But the statute clearly does not so provide.   The plain language of the statute requires the **exhibition** of a deadly weapon by the perpetrator.

¶41.   To find Dambrell guilty of armed robbery under our current statute, we must conclude that he attempted to rob the store by exhibiting a deadly weapon.   Because I respect the opinions of those in the majority, I have carefully considered the argument that walking into a store with a knife wrapped up in a towel, not visible to anyone, can be construed as an "exhibition of a deadly weapon."   I just can't get there.

¶42.   The Legislature could have easily provided that armed robbery includes an attempt to rob while in possession of a deadly weapon.   Instead, the Legislature saw fit to require not only possession of the deadly weapon, but also an exhibition of it.   Dambrell never showed, or in any other way exhibited, his weapon. Dambrell entered the store with the knife wrapped inside the towel and, upon seeing the clerk on the telephone, threw the towel containing the knife to the floor and fled.   It was not until Dambrell abandoned his attempt to rob the store and was fleeing the scene that the clerk saw the knife.   These facts are not in dispute.

¶43.   I would adhere to the reasoning in this Court's decision in *Clark v. State*, 756 So. 2d 730 (Miss. 1999).   In *Clark*, this Court held that the State had failed to prove that a deadly weapon had been exhibited as required by Miss. Code Ann. § 97-3-79.   The victim in *Clark*,

16

a store clerk, became afraid that robbery was imminent when he observed Clark's behavior and when he thought he saw a knife handle in Clark's pocket. Clark stole money from the cash register and then fled, but never threatened the clerk with the use of a knife or pulled a knife out of his pocket. This Court held:

> In other words, the proof of the crime of armed robbery must necessarily include that the exhibition of the deadly weapon, causing violence or fear of immediate injury, was the means by which the personal property of another was taken. Such is not the case here. . . . No deadly weapon was exhibited or the use of a deadly weapon threatened by Clark in this set of facts: While we do not propose to give absolute meaning or strict definition to the phrase "by the exhibition of a deadly weapon," it is clear that it means something more than mere possession. There is simply no proof that Clark used the purported knife in any manner whatsoever during the commission of the offense. He did not threaten Free verbally or physically with the knife.

756 So. 2d at 732.

¶44. The majority allows a defendant to be convicted of armed robbery because the victim reasonably believed that a deadly weapon was present and, therefore, was reasonably placed in fear of immediate injury. I agree with the majority that this is what the law of armed robbery ought to be. However, that is not the law enacted by the Legislature.

¶45. We are required to strictly construe the statutory language and apply its words as they were written by the Legislature. The majority's decision today does not do so, and I must therefore respectfully dissent. I would affirm the judgment of the Court of Appeals reversing and rendering Dambrell's conviction.