MYERS, P.J.,
 

 for the court:
 

 ¶ 1. Clayton Trammell was convicted by a jury sitting before the Warren County Circuit Court for armed robbery and sentenced by the trial court to thirty years in the custody of the Mississippi Department of Corrections. Trammell’s post-trial motion for a new trial was denied, and he perfected this appeal. Trammell claims: (1) the trial court erred in denying his motion to suppress evidence; (2) the verdict is against the weight of the evidence; (3) the evidence was insufficient to sustain a conviction of armed robbery; (4) the trial court erred in denying certain defense jury instructions; (5) the trial court erred in failing to grant a competency hearing; (6) he received ineffective assistance of counsel; (7) the trial court imposed an excessive sentence; and (8) cumulative error merits reversal. Finding no merit to any of these claims, we affirm the judgment of conviction and sentence.
 

 FACTS
 

 ¶ 2. On the evening of April 24, 2007, Trammell, then age twenty-seven, enlisted Arthur Andrews and Carl Junn Rumbley, both age sixteen, to help him rob the Pig-gly Wiggly store in Vicksburg, Mississippi. Trammell had been “scoping Piggly Wiggly out,” and he knew that the store did not have security cameras. To create a diversion, Trammell directed Andrews to call 911 and report a shooting in another part of town. Trammell and Andrews entered the Piggly Wiggly, and Trammell approached the store’s customer-service counter where he handed Angela Hamilton, an employee, a note which read: “Put all the money in the bag. Now! I have a gun. I will use it. Don’t make a sound.” Hamilton complied. Although she never saw a gun, Hamilton testified that she believed Trammell had one due to the note and the fact that Trammell had kept his right hand in his pocket.
 

 ¶ 3. Three days later, Hamilton identified Trammell from in a photographic lineup. At trial, Hamilton testified that Tram-mell was a regular customer at the store. She recalled seeing Trammell in the store on the night before the robbery when he came in and asked about a money order from California.
 

 ¶4. Andrews and Rumbley were the first ones to be apprehended by the police after the robbery. Both gave statements to the police implicating Trammell in the robbery. Trammell was indicted on one count of armed robbery and two counts of directing a child to commit a felony.
 

 ¶ 5. At trial, Trammell was granted a directed verdict on the two counts of directing a child to commit a felony. Tram-mell was found guilty of armed robbery and sentenced to thirty years in the custody of the MDOC. Additional facts will be
 
 *427
 
 related, as necessary, during the discussion.
 

 DISCUSSION
 

 I. Motion to Suppress Evidence
 

 ¶ 6. Following their interviews with Andrews and Rumbley, the police obtained a search warrant for Trammell’s home. The search warrant listed the following items to be seized: “money, checks, money order receipts, clothing worn during the robbery of the Piggly Wiggly store to include gray hooded sweatshirt, dark denim pants, long sleeve black shirt.” During the search of Trammell’s home, which Trammell shared with his mother, Officer Billy Brown found and seized a gun hidden underneath clothes in a closet located in the living-room area of the home. Prior to trial, Trammell moved to suppress the gun. The trial court denied the motion, finding that the gun was admissible under the plain-view doctrine. Trammell argues on appeal that the gun should have been suppressed because it was not specifically listed in the search warrant and was not in plain view.
 

 ¶ 7. A trial court’s denial of a motion to suppress will not be overturned where the trial court’s findings are supported by substantial credible evidence.
 
 Johnson v. State,
 
 999 So.2d 860, 363 (¶ 13) (Miss.2008). Under the plain-view doctrine, the police may make a warrantless seizure when the officer is lawfully in a position to view an object; the object’s incriminating character is immediately apparent; and the officer has a lawful right of access to the object.
 
 Walker v. State,
 
 881 So.2d 820, 827 (¶ 16) (Miss.2004). “[PJroperty which has a sufficient nexus to the crime being investigated may be seized at the time officers are properly executing a warrant authorizing a search for other items.”
 
 Lockett v. State,
 
 517 So.2d 1317, 1326 (Miss.1987) (quoting
 
 Garland v. Maggio,
 
 717 F.2d 199, 206 (5th Cir.1983);
 
 United States v. Kane,
 
 450 F.2d 77, 85 (5th Cir.1971);
 
 United States v. Gentry,
 
 642 F.2d 385, 387 (10th Cir.1981)).
 

 ¶ 8. In
 
 Lockett,
 
 the police conducted a search of the defendant’s premises based on a search warrant that only listed “guns” as the items sought.
 
 Id.
 
 at 1325. After finding two guns in the defendant’s bedroom, the police continued their search and discovered credit cards hidden behind a wall plaque.
 
 Id. Lockett
 
 held that when the police are executing a valid search warrant and come across “other incriminating articles” not specified in the warrant, those items may be seized.
 
 Id.
 
 Based on the facts of the case, the
 
 Lockett
 
 court reasoned that while “[i]n the course of searching for the guns[,] the officers were entitled to make reasonable inspection of places where the guns may have been hidden!!,]” such as “[a] wall plaque which may well conceal a space within a wall where such items may be hidden.”
 
 Id.
 
 at 1326.
 

 ¶9. During the suppression hearing in this case, Officer Brown testified that when he opened the closet door, he noticed some articles of clothing on the shelf above where other clothing articles were hanging. Upon inspecting the items, Officer Brown located a gun. Officer Brown informed Officer Jeff Merritt, who was conducting a search elsewhere in the home, that he had found a gun. Officer Merritt testified that when he asked Trammell’s mother about the gun, she denied ownership of it.
 

 ¶ 10. Based upon the evidence in the record, we find that Officer Brown was lawfully on the premises. Officer Brown was entitled to make reasonable inspection of places where the items identified in the search warrant may have been hidden, and the living-room closet was such a location. Having discovered the gun, it was reason
 
 *428
 
 able for Officer Brown to believe, under the circumstances of the investigation, that the gun had evidentiary value. Accordingly, we affirm the trial court’s denial of Trammell’s motion to suppress. This issue is without merit.
 

 II/III. Weight and Sufficiency of the Evidence
 

 ¶ 11. Most of the claims Trammell raises under the weight-of-the-evidence issue actually challenge both the sufficiency of the evidence and the weight of the evidence. Therefore, we will address issues two and three together.
 

 ¶ 12. Trammell claims that the verdict is against the weight of the evidence because Hamilton: did not see Trammell brandish a gun during the robbery, did not testify that she was in fear for her life, and did not testify that Tram-mell threatened her during the robbery. Trammell also contends that Hamilton’s identification of him is questionable because she testified at trial that he was a regular customer at the store, but Officer Brown testified that he had learned Tram-mell’s identity from Andrews. On this point, Trammell submits that Hamilton did not actually identify him as the perpetrator of the armed robbery until the day of trial, after she was “educated and coached” by the State. Lastly, Trammell contends that the State failed to prove that he committed the crime of robbery because the State failed to meet its burden of proof showing that he had actual knowledge of the gun used in the robbery which was found at his mother’s residence.
 

 ¶ 13. In reviewing whether the evidence is sufficient to sustain a conviction, the Mississippi Supreme Court has stated that: “the critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.’ ”
 
 Bush v. State,
 
 895 So.2d 836, 843 (¶ 16) (Miss.2005) (quoting
 
 Carr v. State,
 
 208 So.2d 886, 889 (Miss.1968)). This inquiry does not require a reviewing court to ask whether the evidence established the defendant’s guilt beyond a reasonable doubt.
 
 Id.
 
 (quoting
 
 Jackson v. Virginia,
 
 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Instead, the reviewing court considers whether, after viewing the evidence in the light most favorable to the State, “any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.”
 
 Id.
 
 (quoting
 
 Jackson,
 
 443 U.S. at 315, 99 S.Ct. 2781).
 

 ¶ 14. In determining whether a jury verdict is against the overwhelming weight of the evidence, we view all of the evidence in the light most favorable to the verdict.
 
 Id.
 
 at 844 (¶ 18). This Court will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.
 
 Smith v. State,
 
 925 So.2d 825, 832 (¶ 16) (Miss.2006).
 

 ¶ 15. Armed robbery is defined by Mississippi Code Annotated section 97-3-79 (Rev.2006), which provides in part:
 

 Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery[.]
 

 ¶ 16. At trial, Hamilton testified that when Trammell presented her with the demand note, which indicated that Tram-mell had a gun, she complied by giving him “the whole bag of money” belonging to the
 
 *429
 
 Piggly Wiggly store. And she testified that Trammell’s actions placed her in fear for her life.
 

 ¶ 17. The fact that Hamilton never saw a weapon is of no matter. In
 
 Lyons v. State,
 
 942 So.2d 247, 250-51 (¶¶ 13-16) (Miss.Ct.App.2006), this Court, relying on the supreme court’s pronouncement in
 
 Dambrell v. State,
 
 903 So.2d 681, 683 (¶ 6) (Miss.2005), held that the exhibition of a note stating that the defendant has a gun is an overt act which would reasonably lead a victim to believe that a deadly weapon is present for the purposes of our armed-robbery statute. The
 
 Dambrell
 
 court held as follows:
 

 We find that when a defendant makes an overt act and a reasonable person would believe that a deadly weapon is present, there is no requirement that a victim must actually see the deadly weapon in order to convict pursuant to Miss. Code Ann. Section 97-3-79. Therefore, a victim is not required to have “definite knowledge” of a deadly weapon in the sense that the weapon must actually be seen by the victim’s own eyes.
 

 Dambrell,
 
 903 So.2d at 683 (¶ 6) (overruling
 
 Gibby v. State,
 
 744 So.2d 244 (Miss.1999)).
 

 ¶ 18. With regard to Hamilton’s identification of Trammell, contrary to Tram-mell’s assertion on appeal, the record reveals that Hamilton did in fact make a positive pretrial identification of Trammell when she picked his picture out of a photographic lineup three days after the armed robbery had occurred. Whether or not Hamilton informed the police immediately after the robbery that she had seen Tram-mell in the store prior to the robbery was something for the jury to ponder, not this Court. Further, as the State points out, Andrews, who participated in the armed robbery along with Trammell, also positively identified Trammell as the perpetrator.
 

 ¶ 19. As to the gun, it was introduced into evidence at trial during Officer Brown’s testimony for the jury’s consideration that Trammell possessed the means to commit the crime of armed robbery, as represented by the note he displayed to Hamilton. In 77 C.J.S.
 
 Robbery
 
 § 79 (2006), this is said:
 

 Testimony connecting a weapon with the accused or the robbery is admissible. Evidence of the defendant’s possession of a weapon is admissible if the jury can infer from the evidence that the weapon could have been used in the commission of the crime. Where an accused’s possession of weapons or other instruments of crime affords no reasonable inference of guilt of the offense charged, it should be excluded. Subject to this qualification, however, evidence is admissible in a robbery prosecution to show that the accused owned, possessed, or had access to tools, implements, or other articles with which the robbery was or might have been committed, and especially when the article is of a lethal nature.
 

 Proof of possession of a deadly weapon is not limited to cases where the weapon is openly displayed, but includes evidence of facts, circumstances, and conduct from which the jury may infer that the robber was armed. It is ordinarily permissible to prove the accused’s ownership or possession of weapons before or after the commission of the robbery, as where weapons were later found in the accused’s car, or in a room occupied by the accused, or in an outbuilding adjacent to his or her residence.
 

 ¶ 20. Officer Brown told the jury about the search that was conducted at Tram-mell’s place of residence and where and how the gun was located. Officer Brown made it known to the jury that he did not
 
 *430
 
 ask Trammell’s mother if the gun belonged to Trammel. Officer Merritt did not testify. During Andrews’s testimony, Andrews told the jury that no gun was involved in the robbery, but he stated that Trammell did own a gun. The respective testimonies presented factual questions for the jury’s determination as to whether the gun found at Trammell’s place of residence was connected to the robbery of the Piggly Wiggly. Trammell’s argument on this point concerns a charge of possession of the gun and not the crime of armed robbery.
 
 See, e.g., Muscolino v. State,
 
 803 So.2d 1240, 1243 (¶ 13) (Miss.Ct.App.2002).
 

 ¶ 21. Based on our review of the record, we find that there was sufficient evidence produced at trial from which the jury could reasonably determine that Trammell was guilty of armed robbery. And we do not find the verdict to be contrary to the weight of the State’s evidence. Issues II and III are without merit.
 

 IV. Defense Jury Instructions
 

 ¶ 22. Trammell contends that the trial court erroneously refused defense jury instructions D-l, D-4, D-6, and D-8. He also argues that he was denied an opportunity to present a defense jury instruction on his theory of the case and that the jury instructions given were not adequate and misled the jury.
 

 ¶ 23. Jury instructions are to be read as a whole.
 
 McKlemurry v. State,
 
 947 So.2d 987, 990 (¶ 3) (Miss.Ct.App. 2006). “No reversible error will be found to exist if, when read together, the instructions correctly state the law and effectuate no injustice.”
 
 Id.
 
 Although a criminal defendant is entitled to present jury instructions which support his theory of the case, that entitlement is limited in that the trial court may properly refuse instructions which are cumulative, incorrectly state the law, or are fairly covered by other jury instructions.
 
 Livingston v. State,
 
 943 So.2d 66, 71 (¶ 14) (Miss.Ct.App.2006).
 

 ¶ 24. Defense jury instruction D-l is an elements instruction, which the trial court denied as being cumulative. The trial court had already granted the State’s instruction S-1A, an elements instruction, which the trial court had found properly stated the law. Defense counsel’s objection to instruction S-1A was that it stated the following element of the crime: “by the exhibition of a deadly weapon through the use of a written note stating that Clayton Trammell was armed with a gun.” Defense counsel argued that the armed-robbery statute references only the display of a deadly weapon. As previously discussed, under the authority of
 
 Dambrell
 
 and
 
 Lyons,
 
 an armed-robbery conviction will be sustained when there is evidence that a note was exhibited to a robbery victim indicating that the perpetrator has a deadly weapon. Jury instruction S-1A properly stated the law, and we find no error with the trial court’s decision to deny defense instruction D-l.
 

 ¶25. Defense instruction D-4 was denied by the trial court as being cumulative. The record reveals that the trial court’s instruction C-l, which is nearly verbatim to D-4, had already been granted with no objection from Trammell.
 

 ¶ 26. Defense instruction D-6 is a circumstantial-evidence instruction, and it was denied by the trial court because the State had presented eyewitness testimony identifying Trammell as the individual who had robbed the Piggly Wiggly store on April 24, 2007. Eyewitness testimony constitutes direct evidence, and when the State presents direct evidence against a criminal defendant, a circumstantial-evidence instruction is not warranted.
 
 Ross v. State,
 
 954 So.2d 968, 1009 (¶ 100) (Miss.
 
 *431
 
 2007);
 
 Jones v. State,
 
 920 So.2d 465, 477-78 (¶ 38) (Miss.2006).
 

 ¶ 27. Finally, defense jury instruction D-8 was a form-of-the-verdict instruction, which included directions for the form of the verdict on two additional counts on which Trammell had been indicted — directing a child to commit a felony. Tram-mell was granted a directed verdict on both of these counts. Accordingly, jury instruction D-8 was properly refused.
 

 ¶ 28. Trammell fails to articulate how the trial court’s refusal to grant the aforementioned defense jury instructions denied him the opportunity to present his theory of the case, or how the given jury instructions were inadequate and misled the jury. For the above stated reasons, we find no error with the trial court’s decision to deny defense jury instructions D-l, D-4, D-6, and D-8. Accordingly, this issue is without merit.
 

 V. Competency Hearing
 

 ¶29. Trammell claims that the trial court committed reversible error in failing to conduct a hearing to determine whether he was competent to stand trial. According to the record, Trammell’s defense counsel filed a motion for appointment of a psychiatrist to conduct a psychiatric evaluation. But the motion was never pursued to a decision.
 

 ¶ 30. As this Court held in
 
 Roy v. State,
 
 878 So.2d 84, 89 (¶ 23) (Miss.Ct.App.2003), a movant is charged with the duty of pursuing a motion through to a hearing for a decision.
 
 See
 
 URCCC 2.04. A psychiatric evaluation is required only if the trial court has reasonable ground to believe that the defendant is incompetent to stand trial. URCCC 9.06. No where in the record is there any indication that the trial court had a reasonable ground to believe that Trammell was not competent to stand trial.
 
 See Epps v. State,
 
 984 So.2d 1042, 1045 (¶ 9) (Miss.Ct.App.2008) (“The defendant bears the burden of ‘persuading the trial judge that there is sufficient evidence to warrant a mental examination.’ ”). Further, a competency hearing is not required unless the trial court has already ordered a psychiatric evaluation.
 
 Sanders v. State,
 
 9 So.3d 1132, 1136 (¶ 16) (Miss.2009) (citing URCCC 9.06).
 

 ¶ 31. Accordingly, we find this matter is procedurally barred.
 

 VI. Ineffective Assistance of Counsel
 

 ¶ 32. “Ordinarily, ineffeetive-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings. This is because during direct appeals the Court is limited to the trial court record in its review of the claim, and there may be instances in which insufficient evidence exists within the record to address the claim adequately.”
 
 Archer v. State,
 
 986 So.2d 951, 955 (¶ 15) (Miss.2008). In such a case, “the proper resolution is to deny relief without prejudice to the defendant’s right to assert the same claim in a post-conviction relief proceeding.”
 
 Liddell v. State,
 
 33 So.3d 524, 533 (¶ 31) (Miss.Ct. App.2010) (quoting
 
 Willis v. State,
 
 811 So.2d 450, 454 (¶8) (Miss.Ct.App.2001)). We may determine the merits of an ineffective-assistance-of-counsel claim on direct appeal only if “the record affirmatively shows ineffectiveness of constitutional dimensions, or ... the parties stipulate that the record is adequate and the Court determines that findings of fact by a trial judge able to consider the demeanor of witnesses, etc. are not needed.”
 
 Id.
 
 The bulk of Trammell’s allegations of ineffective assistance involve alleged inaction by defense counsel based on matters outside the record. And the record does not affirmatively show ineffectiveness of constitutional dimensions. Therefore, we dismiss Trammell’s ineffective-assistance-of-coun
 
 *432
 
 sel claim without prejudice so that he may pursue it in a post-conviction proceeding if he chooses.
 

 VII. Sentence
 

 ¶33. Trammell claims that his thirty-year sentence is effectively a life sentence which requires reversal because the jury did not recommend a life sentence.
 

 ¶ 34. When a jury does not recommend a life sentence on a conviction for armed robbery, the trial court’s imposition of a sentence is proper where the trial court takes into consideration the defendant’s life expectancy and “all the relevant facts necessary to fix a sentence for a definite term of years reasonably expected to be less than life.”
 
 Lindsay v. State,
 
 720 So.2d 182, 185 (¶ 9) (Miss.1998). Here, the trial court consulted two different actuarial tables of life expectancy before imposing Trammell’s thirty-year sentence. Both tables showed the life expectancy for a person of Trammell’s age, sex, and race to be thirty-nine years. In accordance with
 
 Lindsay,
 
 the trial court made a record and considered all the relevant factors necessary to determine Trammell’s sentence, which the record supports as being reasonably less than life.
 
 Id.
 
 at (¶ 11). Therefore, we find Trammell’s sentence to be a lawful sentence. This issue is without merit.
 

 VIII. Cumulative Error
 

 ¶ 35. Where there is no error in any one of the alleged assignment of errors, there can be no cumulative error.
 
 Hughes v. State,
 
 892 So.2d 203, 213 (¶ 29) (Miss. 2004). Thus, we find no merit to Tram-mell’s claim of cumulative error.
 

 ¶ 36. THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WARREN COUNTY.
 

 KING, C.J., LEE, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.