**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 1998-DR-01280-SCT**


*MACK C. WELLS*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 09/28/1995 |
| DATE PCR FILED: | 09/03/1998 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF CAPITAL POST-CONVICTION COUNSEL |
| | BY: DAVID VOISIN |
| | ROBERT M. RYAN |
| | STACY PREWITT |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MARVIN L. WHITE, JR. |
| DISTRICT ATTORNEY: | KEN TURNER |
| NATURE OF THE CASE: | CIVIL - DEATH PENALTY - POST CONVICTION |
| DISPOSITION: | APPLICATION FOR LEAVE TO PROCEED IN TRIAL COURT FOR POST-CONVICTION RELIEF, DENIED - 06/09/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     A Scott County grand jury indicted Mack C. Wells for the capital murder of his thirteen-year-old stepson, Gary "Man" Wells.  After a change of venue to Leake County, Wells was tried and convicted of the crime of capital murder.  At the conclusion of the sentencing phase,

the same circuit court jury found that Wells should receive the death penalty. In due course, the presiding judge, Honorable Marcus D. Gordon, entered judgment consistent with the jury verdict and set a date for Wells's execution by lethal injection. Pursuant to Miss. Code Ann. § 99-19-105, Wells's sentence was stayed pending review by this Court. In due course, Wells's conviction and sentence were affirmed on direct appeal. *Wells v. State*, 698 So.2d 497 (Miss. 1997). Wells's motion for rehearing was denied. *Wells v. State*, 700 So.2d 331 (Miss. 1997). Wells's petition for writ of certiorari was denied by the United States Supreme Court. *Wells v. Mississippi*, 522 U.S. 1122, 118 S.Ct. 1065, 140 L.Ed.2d 125 (1998).

¶2. Wells then sought federal habeas corpus relief in the federal district court. The United States District Court for the Southern District of Mississippi granted a stay of execution and provided Wells additional time to file his federal petition for writ of habeas corpus. *Wells v. Anderson*, No. 3:98-cv-174GR (S.D. Miss.). However, Wells chose instead to file with us an application for leave to proceed in the trial court via a filing of a motion for post-conviction relief pursuant to the Mississippi Uniform Post-Conviction Collateral Relief Act, Miss. Code Ann. §§ 99-39-1, et seq. In his PCR motion, Wells claimed his trial and appellate counsel rendered ineffective assistance thus requiring the vacation of his death sentence and a new sentencing hearing. We eventually allowed a substitution of counsel, and the Office of Capital Post-Conviction Counsel (OCPCC) commenced representation of Wells.

¶3. Anticipating that the United States Supreme Court would be deciding a case that might determine whether Wells received post-conviction relief, we stayed the post-conviction

2

proceedings. On June 20, 2002, the United States Supreme Court decided *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). *Atkins* held that the death penalty was no longer constitutional as applied to an entire class of prisoners, namely, those who were deemed to be mentally retarded, using an Intelligence Quotient of 70 as the standard. Pursuant to *Atkins*, Wells filed a supplemental application which asserted that Wells was mentally retarded and therefore ineligible for the death penalty. In light of *Atkins*, we entered an en banc order remanding the case to the trial court for the limited purpose of "obtaining an evaluation of Wells's mental capacity and conducting an evidentiary hearing to determine whether Wells is mentally retarded" as envisioned in *Atkins*. Upon remand, Judge Gordon conducted an evidentiary hearing and determined that Wells met the *Atkins* standard for mental retardation. Accordingly, Judge Gordon vacated Wells's sentence of death and resentenced Wells to a term of life imprisonment in the custody of the Mississippi Department of Corrections without the benefit of parole.

¶4.    Inasmuch as the original application for post-conviction relief remains before us as an open motion, it requires a final disposition. For the reasons discussed below, we find Wells's application for post-conviction relief to be without merit.

**ANALYSIS**

3

¶5.   Of course, we review any claim of ineffective assistance of counsel by applying the familiar test set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).   The standard for determining if a defendant received effective assistance of counsel has often been noted by this Court. "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."   466 U.S. at 686, 104 S.Ct. at 2064.   A defendant must demonstrate that his attorney's  actions were deficient *and* that the deficiency prejudiced the defense of the case. *Id*. at 687.   "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."   *Stringer v. State,* 454 So.2d 468, 477 (Miss. 1984) (citing *Strickland v. Washington,* 466 U.S. at 687, 104 S.Ct. at 2064).

¶6.   In his original PCR motion, Wells alleged that he had received ineffective assistance of counsel at his original trial and on direct appeal to this Court.   Wells's consternation was that his lawyers on direct appeal to this Court were the same lawyers he had at trial, and that although Wells opined that he had received ineffective assistance from these lawyers both at trial and on appeal, he could hardly expect his lawyers to raise the ineffective assistance claim "against themselves."   A close reading of the original application reveals that Wells's concern about his lawyers' ineffectiveness occurred at the *sentencing* phase of his trial, when his

4

lawyers failed to object to the following comments by the prosecutor during closing arguments:

> The Defendant is already serving life without parole for his aggravated assault. You know, to give him anything less than the death penalty would be like not giving him any punishment at all. He has already got what the defense is asking you to give him, no punishment at all for the brutal murder of Gary Wells.

*Wells*, 698 So.2d at 514. Admittedly, there was no objection by defense counsel to these statements by the prosecutor. On direct appeal, we addressed this assignment of error as follows:

> Wells contends that this argument was improper and constitutes reversible error under ***Hartfield v. State***, 186 Miss. 75, 89-91, 189 So. 530, 532-34 (1939).
>
> A review of the record reveals no objection was raised to these comments at trial and it is raised for the first time on this appeal. Any claim is waived for failure to raise a contemporaneous objection. ***Ballenger v. State***, 667 So.2d 1242, 1272 (Miss. 1995), *cert. denied*, ___ U.S.___, 116 S.Ct. 2565, 135 L.Ed.2d 1082 (1996); ***Davis v. State***, 660 So.2d 1228, 1245 (Miss. 1995), *cert. denied*, ___ U.S.___, 116 S.Ct. 1684, 134 L.Ed.2d 785 (1996); ***Chase v. State***, 645 So.2d 829, 854 (Miss. 1994), *cert. denied*, 515 U.S. 1123, 115 S.Ct. 2279, 132 L.Ed.2d 282 (1995); ***Hansen v. State***, 592 So.2d 114, 139-40 (Miss. 1991), *cert. denied*, 504 U.S. 921, 112 S.Ct. 1970, 118 L.Ed.2d 570 (1992). Accordingly, Wells is procedurally barred from raising this issue for the first time on appeal.
>
> Finding no reversible error among Wells' allegations of improper closing arguments by the prosecution, we find that this assignment of error must fail.

698 So. 2d at 514.

¶7. The same issue before us today was addressed by us on direct appeal and found to be procedurally barred and not reversible error. Thus, we are not required to consider this issue via a PCR motion simply because Wells has now couched this issue as a claim of ineffective

5

assistance of counsel. However, alternatively, we can state with confidence that even when considering this issue today on its merits, Wells's assertion still fails. We must remember that when the prosecutor made these perceived erroneous closing remarks to the jury during the *sentencing* phase of the trial, there was quite appropriately before the jury evidence of Wells's prior conviction and sentence for aggravated assault. Indeed, this is one of the statutory aggravating circumstances which a capital sentencing jury may be appropriately instructed to consider. Miss. Code Ann. § 99-19-101(5)(b) ("defendant was previously convicted of another capital offense or of a felony involving the use or threat of violence to the person"). What we stated in Wells's direct appeal in addressing the claim of improper closing argument during the guilt phase, also holds true when addressing the claim of improper prosecutorial closing argument in the sentencing phase:

> Counsel is allowed considerable latitude in the argument of cases, and is limited not only to the facts presented in evidence, but also to deductions and conclusions he may reasonably draw therefrom, and the application of the law to the facts. *Ivy v. State*, 589 So.2d 1263, 1266 (Miss. 1991); *Davis v. State*, 530 So.2d 694, 701-02 (Miss. 1988). "He may draw whatever deductions seem to him proper from these facts, so long as he does not use violent and abusive language, and even in many cases invectives may be justified and even called for...." *Shell v. State*, 554 So.2d 887, 900 (Miss. 1989) (quoting *Nelms & Blum Co. v. Fink*, 159 Miss. 372, 131 So. 817 (1930)), *rev'd on other grounds*, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990).

698 So. 2d at 506.

¶8.    Thus, in today's case, in considering the prosecutor's comments in the context in which they were made, the prosecutor was simply applying his "deductions and conclusions" reasonably drawn from the evidence in basically arguing to the jury that to give a man a second

6

life without parole sentence is not punishing him at all for the separate crime of killing his stepson. We find no error in such argument.

¶9.     Additionally, Wells's reliance on this Court's decision in *Hartfield v. State*, 186 Miss. 75, 189 So. 530 (1939), is misplaced.    In *Hartfield,* the defendant was a trusty serving life imprisonment in the state penitentiary when he made an *authorized* trip from Parchman to Jackson, but took *unauthorized* liberties by going out to a bar, consuming a large quantity of alcohol, and killing a bar patron.    During the closing argument at Hartfield's murder trial, the prosecutor informed the jury that it should consider neither a manslaughter verdict nor a life sentence, but instead, the jury should consider only the death sentence since punishment less than death would mean nothing since Hartfield was already serving a life sentence at the time he committed the killing.    *Hartfield* is factually dissimilar for several reasons.    First of all, we must remember that under then-existing law, Hartfield's trial was not bifurcated.    In Hartfield's trial, when the jury retired to deliberate, it considered both the issue of guilt and the appropriate sentence.    Also, the trial judge had erroneously allowed into evidence through the State's questioning of a witness the following:  "Q. You never knew [Hartfield] at all, except as a convict in the state penitentiary, who was committed there for life, did you? A.   No, sir."   189 So. at 534.   Additionally, the prosecutor took this erroneously admitted evidence to bolster his closing arguments to the jury.    Finally, the prosecutor, by his closing arguments to the jury, in essence told the jury to not even consider the manslaughter option because such a verdict would result in a sentence less than death.    *Id.*    In other words, the

prosecutor inappropriately told the jury to fast-forward past deliberating on the issue of guilt or innocence as to manslaughter or murder and jump straight to the imposition of the death penalty. In reversing Hartfield's conviction of murder and sentence of death and remanding the case to the trial court for a new trial, this Court stated:

> It will be observed from the language used by the prosecuting attorney, that his statement was not limited merely to the punishment in the event the jury should find the defendant guilty of murder. It advised the jury that neither a manslaughter verdict, nor a life sentence, should be returned. His statement presupposed that the jury might believe the defendant only guilty of manslaughter, and then cautioned the jurors in effect that even though they should so believe, it would be useless to return that verdict, or any other verdict less than the death penalty. To advise the jury, with the approval of the court as being within the proprieties, that a verdict of manslaughter or a life sentence would be equivalent to no punishment at all could have no other possible effect than to inform the jurors that it was immaterial whether they believed the defendant guilty of manslaughter or murder, since the proper and only punishment in either event was asserted to be the death penalty.

*Id.* at 532-33.

¶10. To inform the jury during closing arguments that the only proper punishment was death, even if the jury believed the defendant to be guilty of manslaughter, is a far cry from what the prosecutor told the jury at Wells's trial. At the time that the jury heard the prosecutor's comments about which Wells complains, the jury (1) had already found Wells guilty of capital murder, (2) had already been properly informed of Wells's previously imposed life sentence, (3) had already heard argument from defense counsel on this point, and (4) had already been appropriately instructed by the trial judge to consider, inter alia, the character and record of Wells in deciding the appropriate sentence. This is all part of our statutory scheme in bifurcated death penalty trials. Miss. Code Ann. §§ 99-19-101 et seq.

8

¶11. Wells would have us pluck from the voluminous record before us defense counsel's failure to object to what we have now deemed to be not inappropriate comments by the prosecutor in closing arguments during the sentencing phase of trial and find his trial counsel to be *Strickland* ineffective. The entire record in this case reveals that Wells's trial counsel submitted filed and ore tenus motions, cross-examined witnesses, and indeed made numerous objections. We refuse to find ineffectiveness on such a claim as the one before us today. There can be no doubt that Wells has fallen far short in demonstrating that his trial counsel's actions were deficient *and* that the deficiency prejudiced his defense. *Strickland*, 466 U.S. at 687. *See also Stringer v. State*, 454 So.2d at 477.

## CONCLUSION

¶12. Mack C. Wells confessed to the brutal murder of his thirteen-year-old stepson. His capital murder conviction and death sentence were reviewed by this Court, the United States Supreme Court, and the United States District Court for the Southern District of Mississippi. Upon an *Atkins* remand by order of this Court to the trial court, Judge Marcus Gordon conscientiously performed his responsibilities and, upon the State's motion to vacate the death sentence, entered an order vacating Wells's death sentence and resentencing Wells to a term of life imprisonment in the custody of the Mississippi Department of Corrections without the benefit of parole. We have now considered the remaining issues contained in Wells's original PCR motion and, for the reasons stated, we find them to be without merit. We thus deny Wells's application for post-conviction relief.

9

¶13. **APPLICATION FOR LEAVE TO PROCEED IN TRIAL COURT FOR POST-CONVICTION RELIEF, DENIED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ AND GRAVES, JJ., NOT PARTICIPATING.**