ISHEE, J.,
for the Court:
¶ 1. Donald James Wilson was convicted in the Franklin County Circuit Court of armed robbery. and sentenced to forty years in the custody of the Mississippi Department of Corrections (MDOC). Wilson brings three issues for our review: (1) whether there was sufficient evidence to support the verdict; (2) whether the trial court erred in failing sua sponte to declare a mistrial; and (3) whether Wilson received ineffective assistance of counsel. We find no error and affirm.
STATEMENT OF FACTS
¶ 2. At 2:30 p.m. on December 2, 2009, the Bank of Franklin in Roxie, Mississippi (the bank), was robbed by two men, who were fully clothed in camouflage. The men announced to the bank’s two tellers that they were there to rob the bank. The men then jumped over the counter and one man’s knees struck a teller, knocking her to the floor. After the robbers successfully took $92,066.25 from the bank, they instructed the tellers to lie on the floor while they exited the bank. The entire robbery lasted approximately two minutes.
¶ 3. Upon entering the bank, one of the robbers assured the tellers they did not want to hurt them. However, one of the tellers, Debbie Smallwood, testified she saw what looked to' be a large butcher knife in the pant leg of one of the men.
*1203 ¶ 4. The two tellers were unable to identify the men, as they were covered head to toe in camouflage. However, Pat Lang-ston, the other teller present at the time of the robbery, saw a partially uncovered area on one of the men’s arm and described him to be black and very muscular. Langston also saw the man’s shoe and testified that he smelled “woodsy.” Lang-ston discovered she was covered in “beggar lice” [1] after the incident.
¶ 5. The Franklin County Sheriffs Office investigated the bank robbery. Deputy David Blackwell was the lead investigator. He testified that Langston’s blouse was covered in beggar-lice seeds. He also stated that after the incident, photographs taken by the bank’s surveillance video were released to the public and tips began coming in to the station. One person reported seeing a small, white pickup truck near the bank at the time of the robbery. According to Deputy Blackwell, a review of the evidence and eyewitness testimony led investigators to Wilson’s involvement in the crime. Investigators discovered the small white pickup truck seen near the scene of the crime was owned by Wilson. Deputy Blackwell obtained the authority to search Wilson’s pickup truck. Upon examining the vehicle, he observed beggar lice and a plaid shirt that resembled one Deputy Blackwell had seen in the surveillance video of the robbery.
¶ 6. The sheriffs office then contacted Deona Fleming, Wilson’s girlfriend. Fleming claimed Wilson had dropped her off at work on the day of the incident and that he was driving a white pickup truck. Fleming also stated Wilson told her he had gone into the bank to get money and not to kill anyone. She further noted that upon seeing a surveillance video of the robbery on television, Wilson stated: “I am on TV.” Additionally, Wilson showed Fleming a bag containing about $30,000.
¶ 7. Wilson was indicted for armed robbery on May 5, 2010. A trial took place in the Franklin County Circuit Court in Meadeville, Mississippi, on September 14, 2010. At trial, Wilson presented evidence that he was visiting his uncle and brother in Ferriday, Louisiana, at the time of the robbery and did not come back to Mississippi until the next day. His brother’s wife stated she was positive Wilson was at her house on December 2, 2009, because she was in court that day and remembered the date. Wilson also presented a witness who stated that the truck she saw near the bank was different than the truck she knew to belong to Wilson. Nevertheless, the jury returned a verdict of guilty. The trial court sentenced Wilson to forty years in the custody of the MDOC. Wilson now appeals. We find no error and affirm his conviction and sentence.
DISCUSSION
I. Whether the evidence presented is sufficient to support the guilty verdict of armed robbery
¶ 8. Our standard of review relating to the legal sufficiency of evidence is well settled:
In reviewing whether the evidence supporting a jury verdict is legally sufficient, this Court does not determine whether from the evidence we would have voted to convict or acquit. Rather, we view the evidence in the light most favorable to the prosecution and determine whether a rational juror could have concluded beyond a reasonable doubt that all elements of the crime were satisfied.
*1204 Readus v. State, 997 So.2d 941, 944 (¶ 13) (Miss.Ct.App.2008) (internal citations omitted).
¶ 9. The Mississippi Supreme Court has held that in considering whether the evidence is sufficient to sustain a conviction, the critical inquiry is whether the evidence shows “beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test[,] it is insufficient to support a conviction.” Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (citing Carr v. State, 208 So.2d 886, 889 (Miss.1968)). Should the facts and inferences considered in a challenge to the sufficiency of the evidence “point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty,” the proper remedy is for the appellate court to reverse and render. Edwards v. State, 469 So.2d 68, 70 (Miss.1985).
¶ 10. Wilson was convicted of armed robbery under Mississippi Code Annotated § 97-3-79 (Rev. 2000), which states in pertinent part:
Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery[.]
¶ 11. Wilson argues that a deadly weapon must actually be used in the commission of a robbery in order for the robbery to constitute an armed robbery. He contends that the knife he allegedly possessed was never used in the robbery, nor was it referred to during the robbery as part of a spoken or written threat. He also argues that the knife was not directly or indirectly the cause of the fear of any immediate injury to the tellers. Thus, he asserts the State failed to prove one of the essential elements of the crime of armed robbery.
¶ 12. However, Wilson failed to assert this argument prior to the instant appeal. Since Wilson failed to raise this issue before the trial court, the issue may not be raised on appeal. “[A]n appellant is not entitled to raise new issues on appeal that he has not first presented to the trial court for determination.” Stewart v. State, 67 So.3d 829, 834 (¶ 23) (Miss.Ct.App.2011) (citing Bush, 895 So.2d at 842 (¶ 13)). “Under Mississippi law, an appellant is not entitled to raise a new issue on appeal, since to do so prevents the trial court from having an opportunity to address the alleged error.” Dunn v. State, 693 So.2d 1333, 1339 (Miss.1997) (quoting Crowe v. Smith, 603 So.2d 301, 305 (Miss.1992)).
¶ 13. Wilson argued to the trial court that he could not have robbed the bank since he was not in town at the time the robbery occurred. He made no argument regarding the elements of the crime, instead asserting that it was not him who committed the crime. Now he asserts that the State failed to prove the elements of a crime he allegedly did not commit. Accordingly, we find this issue to be procedurally barred.
¶ 14. Notwithstanding the procedural bar, Wilson’s claim that insufficient evidence was presented to prove all the elements of armed robbery is without merit. In order to establish that Wilson committed armed robbery, the State was required to prove: (1) a felonious taking or attempt to take (2) from the person or from the presence (3) the personal property of another (4) against his or her will (5) “by violence to his person or by putting such person in fear of immediate injury to his *1205 person by the exhibition of a deadly weapon.” Miss.Code Ann. § 97-B-79.
¶ 15. Wilson particularly takes issue with element five: “by the exhibition of a deadly weapon.” Wilson argues the State did not provide sufficient evidence to support a finding that, upon entering the bank, he exhibited a deadly weapon. Wilson argues there must be some overt act evincing the intended use of the deadly weapon, and here there was no overt act on his part showing his intent to use the knife.
¶ 16. In Clark v. State, 756 So.2d 730, 731 (¶ 4) (Miss.1999), a cashier saw what appeared to be a knife in Clark’s pocket while Clark was repeatedly looking into the register and acting erratically. Clark’s eyes were red and he appeared to be waiting for other customers to leave the store. Id. Clark did not use the knife to take the money from the register; instead, he merely reached into the register and took the money. Id. Wilson relies on the following statement from Clark: “While we do not propose to give an absolute meaning or strict definition of the phrase ‘by the exhibition of a deadly weapon,’ it is clear that it means something more than mere possession.” Id. at 732 (¶ 11).
¶ 17. However, the Mississippi Supreme Court later distinguished Clark in Dambrell v. State, 903 So.2d 681 (Miss.2006). Dambrell entered a store with his face covered up to his nose and a towel wrapped around his hand. Id. at 682 (¶ 3). After seeing Dambrell lurking outside the store, the clerk called the police, which Dambrell overheard. Id. at 682 (¶¶ 2-3). Upon hearing that the police were on their way, Dambrell fled the store, throwing the towel across the store counter. Id. at 682 (¶ 3). A butcher knife fell out of the towel. Id. The supreme court found that wearing a mask or disguise immediately places a person in fear of harm. Id. at 688 (¶ 27). The supreme court determined the mask indicated to onlookers that the person wearing it had the intent to harm others. Id. at 688 (¶ 31). The supreme court further held that: “So long as a victim reasonably believes that the defendant had a deadly weapon[,] and the defendant makes an overt act[,] the statute is satisfied.” Id. at 689 (¶ 32).
¶ 18. The tellers in this case reasonably believed one of the men had a knife because one teller thought she saw the knife. They were immediately placed in fear of harm when the men entered the bank and told the women to hand over the money. The overt act need not be the showing of the deadly weapon, only an overt act during the commission of the crime. The men were wearing head-to-toe camouflage and masks, much like the Dambrell case, indicating to the tellers that the men meant harm.
¶ 19. Considering the evidence in the light most favorable to the State, we find that there was sufficient evidence to convict Wilson of armed robbery. Thus, while we find Wilson’s claim of insufficient evidence is proeedurally barred, we also find this issue to be without merit.
II. Whether the trial court erred in not sua sponte declaring a mistrial when a witness stated that Wilson was a “three time loser”
¶ 20. Our standard for reviewing the trial court’s grant or denial of a mistrial is abuse of discretion.
Case law unequivocally holds that the trial judge is in the best position for determining the prejudicial effect of an objectionable remark. The judge is provided considerable discretion to determine whether the remark is so prejudicial that a mistrial should be declared. Where serious and irreparable damage *1206 has not resulted, the judge should admonish the jury then and there to disregard the impropriety.
Edwards v. State, 856 So.2d 587, 593 (¶ 19) (Miss.Ct.App.2003) (quoting Coho Res. Inc. v. McCarthy, 829 So.2d 1, 18 (¶ 50) (Miss.2002)).
¶ 21. Wilson argues the trial court erred in not declaring a mistrial when a witness stated on the stand that Wilson was a “three time loser,” referring to Wilson’s prior crimes. Wilson contends that while he neither objected to the statement nor requested a mistrial, the trial court should have declared a mistrial sua sponte because the statement was highly prejudicial.
¶ 22. The State responds that Wilson is procedurally barred from raising this issue since he failed to object at trial. We agree. A defendant’s failure to object to the admission of any evidence at trial waives his ability to appeal the issue. Starr v. State, 997 So.2d 262, 266 (¶ 10) (Miss.Ct.App.2008).
¶ 23. Wilson asserts that the statement that he was a “three time loser” was inadmissible under Mississippi Rules of Evidence 403 and 404(b) because it served no evidentiary purpose. Mississippi Rule of Evidence 403 states: “Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.” M.R.E. 403.
¶24. Wilson argues the statement is more prejudicial than probative. He also claims the statement is inadmissible under Mississippi Rule of Evidence 404(b), which prohibits evidence of other crimes, wrongs, or acts to “prove the character of a person to show that he acted in conformity therewith.” M.R.E. 404(b). Wilson asserts that the only purpose the statement could have served was to tell the jury that he was a career criminal. He argues the admission of the statement deprived him of a fair trial.
¶ 25. After the statement was made, Wilson’s defense counsel made no objection or request for a mistrial, indicating that he did not believe the statement had resulted in irreparable prejudice to Wilson. Having reviewed the record as a whole and in reference to our standard of review, we find the statement was not prejudicial to Wilson’s case. This issue is without merit.
¶ 26. However, Wilson claims that this Court should review the issue under the plain-error doctrine. If an error at trial affects the substantial rights of a party, resulting in “manifest miscarriage of justice,” then the plain-error doctrine is applicable. Brown v. State, 37 So.3d 1205, 1212 (1117) (Miss.Ct.App.2009) (citing Clark v. State, 14 So.3d 779, 782 (¶7) (Miss.Ct.App.2009)). Thus, the plain-error doctrine “should only be used for ‘correcting obvious instances of injustice or misapplied law.’ ” Id. (quoting Starr, 997 So.2d at 267 (¶ 12)). Having found no obvious instances of injustice, this issue is without merit.
III. Whether Wilson received ineffective assistance of counsel
¶ 27. Wilson claims he received ineffective assistance of counsel because his trial attorney: (1) failed to rebut the State’s race-neutral reasons for its peremptory juror challenges; (2) failed to move for a directed verdict at the close of the State’s case; (3) failed to file a peremptory instruction; (4) introduced inflammatory evidence of Wilson’s possession of a concealed razor blade; (5) opened the door and failed to object to testimony that Wilson was a *1207 “three-time loser”; and (6) failed to file a motion for a judgment notwithstanding the verdict (JNOV) after trial.
¶ 28. When addressing an ineffective-assistanee-of-counsel claim, we must adhere to the two-prong analysis originally set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Stringer v. State, 454 So.2d 468, 476-77 (Miss.1984). In order to prevail on his ineffective-assistance-of-counsel claim, Wilson must first show that his counsel’s performance was deficient and then that the deficient performance prejudiced his defense. Liddell v. State, 7 So.3d 217, 219 (¶ 6) (Miss.2009) (quoting Strickland, 466 U.S. at 687, 104 S.Ct. 2052). To establish prejudice, an appellant must show by a “reasonable probability” that “but for” the counsel’s deficient performance, the outcome of the case would have been different. Strickland, 466 U.S. at 694,104 S.Ct. 2052. We “must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance.” Liddell, 7 So.3d at 219 (¶ 6) (citation omitted).
¶ 29. Wilson first contends he received ineffective assistance of counsel because his trial attorney failed to rebut the State’s race-neutral reasons for exercising its peremptory challenges. However, Wilson does not offer any argument as to how this alleged deficiency prejudiced his case. That is, he has not shown that “but for” the failure of the trial counsel to rebut the State’s race neutral reasons, the outcome of his case would have been different.
¶ 30. Wilson also asserts glaring failures of his trial counsel include his failure to move for a directed verdict at the close of the State’s case, failure to renew that motion at the close of the evidence, failure to submit a peremptory instruction, and failure to move for a JNOV after the close of the case.
¶ 31. We presume that an attorney’s conduct is adequate. Hull v. State, 983 So.2d 331, 333-34 (¶ 11) (Miss.Ct.App.2007) (citing Burns v. State, 813 So.2d 668, 673 (¶ 14) (Miss.2001)). As such, on matters of trial strategy, we generally defer to the judgment of counsel. We have held that “counsel’s choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections falls within the ambit of trial strategy.” Bigner v. State, 822 So.2d 342, 346-47 (¶24) (Miss.Ct.App.2002).
¶ 32. Wilson argues effective counsel cannot introduce irrelevant and prejudicial evidence against his client. He asserts his trial counsel introduced inflammatory evidence when, during cross-examination of a witness for the State, he asked if Wilson had a weapon on him at the time of his arrest. The State’s witness answered that Wilson had a razorblade on him at the time of his arrest. Wilson contends that either his trial counsel did not know the answer to this question, meaning the attorney failed to conduct a proper investigation, or that the attorney did know the answer, meaning such a question was designed only to produce highly prejudicial evidence.
¶ 33. However, the decision to ask certain questions is part of trial strategy, and Wilson’s counsel could have chosen to ask this question for a number of reasons. The asking of this question does not fulfill either prong of the Strickland standard. Wilson fails to prove that this question constitutes deficient performance or changed the outcome of his case.
¶ 34. Wilson next argues that his trial counsel’s was ineffective by failing to ask for a direct verdict or a peremptory instruction. The Mississippi Supreme *1208 Court has held that the failure to ask for a peremptory instruction or move for a directed verdict may constitute ineffective assistance of counsel. Holland v. State, 656 So.2d 1192, 1197-98 (Miss.1995). However, Wilson has failed to prove that his trial counsel’s performance caused any prejudice to his case.
¶ 35. While we see some merit in Wilson’s argument that his trial counsel’s performance was deficient for failure to ask for a peremptory instruction or move for a directed verdict, we cannot say that this deficiency caused him prejudice. Wilson has failed to prove that his trial counsel’s deficiency was so substantial as to deprive him of a fair trial. Strickland, 466 U.S. at 687, 104 S.Ct. 2052.
¶ 36. Wilson’s argument to the trial court was that he was not present in the State of Mississippi at the time of the robbery, so it was impossible for him to have committed the crime. His trial counsel’s decision to proceed with an alibi defense instead of sufficiency-of-the-evidence defense not only falls within the ambit of trial strategy but did not prejudice his case in any way. We have already discussed the sufficiency of the evidence argument and have found that it was not only procedurally barred, but also without merit. Because Wilson’s counsel could have been acting from a point of legal strategy in proving that the Wilson did not commit the armed robbery, the failure to ask for a peremptory instruction or directed verdict does not constitute ineffective assistance of counsel.
¶ 37. The defendant must prove a reasonable probability exists that but for the deficiencies of the trial counsel, the outcome of the case would have been different. Nicolaou v. State, 612 So.2d 1080, 1086 (Miss.1992). There was less than a reasonable probability in this case that the outcome would have been different. Again, the decision to proceed with an alibi defense falls within the ambit of trial strategy and cannot have prejudiced Wilson. Wilson has offered no argument, and there is no evidence in the record, that a failure-to-prove-the-elements-of-the-crime defense would have been a more successful approach.
¶ 38. Therefore, the trial counsel’s failure to ask for a peremptory instruction or directed verdict did not prejudice Wilson’s defense. Because Wilson fails to prove prejudice to his case, he has not satisfied the second prong of Strickland, and his claim of ineffective assistance of counsel must fail.
CONCLUSION
¶ 39. Wilson’s first assignment of error regarding sufficiency of the evidence is procedurally barred because he presents on appeal an issue not raised at the trial level. Additionally, we find no merit to this argument because the State presented sufficient evidence that Wilson used a weapon to place someone in fear of immediate harm. Wilson’s second assignment of error that the trial court erred in failing sua sponte to declare a mistrial is also without merit. Finally, Wilson’s ineffective-assistance-of-counsel claim is also meritless. His arguments consistently fail to fulfill the Supreme Court’s two-prong standard set forth in Strickland. Accordingly, we affirm the judgment of the circuit court.
¶ 40. THE JUDGMENT OF THE FRANKLIN COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF FORTY YEARS IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO FRANKLIN COUNTY.
*1209 LEE, C.J., GRIFFIS, P.J., BARNES, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. Beggar lice is a plant with burs that easily sticks to clothing.