CARLTON, J.,
for the Court:
¶ 1. A Tishomingo County jury convicted Cliff Hensley[1] of conspiracy to manufacture methamphetamine, and the trial court sentenced him as a habitual offender to serve twenty years in the custody of Mississippi Department of Corrections (MDOC). Cliff previously filed a direct appeal of his sentence, which was affirmed by the Mississippi Supreme Court. Hensley v. State, 72 So.3d 1065, 1070 (¶ 15) (Miss.2011) (Hensley I). Cliff now files this motion for post-conviction relief (PCR), asserting that the trial court erred in granting the State’s motion to amend this indictment to sentence him as a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Rev.2007). Finding no error, and finding the issue was previously addressed on direct appeal, we affirm. See Hensley I, 72 So.3d at 1070 (¶ 15).
*348 FACTS
¶ 2. On June 20, 2007, Mississippi Bureau of Narcotics Officer Jeff Palmer and Corinth Police Officer Ben Caldwell conducted a traffic stop of a vehicle driven by Cliff. Cliffs brother, Jeff Hensley, was in the passenger seat. Officer Palmer had received a phone call from a Kroger pharmacy in Corinth, Mississippi, telling him that Jeff was attempting to buy pseudoephedrine.[2]
¶ 3. Officer Palmer and Officer Caldwell arrived to Kroger to perform surveillance of the parking lot as the vehicle Jeff was riding in left. While performing surveillance, the officers observed the Hensley brothers drive to Burnsville, Alabama, and make a loop through the parking lot of a closed pharmacy. Shortly after, the officers conducted the traffic stop.
¶ 4. Officer Palmer and Officer Caldwell proceeded to question Jeff and Cliff about their trip to Alabama. Jeff gave Officer Palmer permission to search the vehicle. During the search, the officers discovered a plastic container containing $100 in cash and forty-eight loose pseu-doephedrine pills, as well as two empty boxes of pseudoephedrine and a Kroger receipt.
¶ 5. Cliff and Jeff were arrested and transported to the Tishomingo County Sheriffs Department. Officer Palmer received a written statement from Cliff admitting that he and Jeff had been purchasing pseudoephedrine pills. Cliff explained that Jeff would then take the pills to someone who cooked meth.
¶ 6. The Tishomingo County grand jury indicted Cliff for conspiracy to manufacture methamphetamine. A trial was held on May 11-12, 2010. After the State rested, the defense moved for a directed verdict, asserting that the State was unable to prove that there had been an agreement on June 20, 2007, to manufacture methamphetamine. The motion for a directed verdict was denied. The State then moved to amend the indictment pursuant to Mississippi Code Annotated section 99-19-81 to reflect Cliffs habitual-offender status. The motion previously had been filed, and defense counsel had been given notice of the motion. The judge granted the motion. The jury ultimately found Cliff guilty, and the trial court sentenced him to serve twenty years in the custody of the MDOC.
¶ 7. Cliff appealed his conviction, claiming that he could not have committed conspiracy to violate Mississippi Code Annotated section 41—29—139(b)(1) (Rev.2013) because that statute proscribed no criminal conduct, but rather, constituted a sentencing statute. The trial judge denied Cliffs appeal. Cliff appealed to the Mississippi Supreme Court, which unanimously affirmed his conviction. See Hensley I, 72 So.3d at 1070 (¶ 15).
¶ 8. On July 10, 2012, Cliff filed a motion to set aside his sentence in the trial court.[3] The trial court treated the motion *349 as a PCR motion, and denied relief. Hensley then filed this appeal.
STANDARD OF REVIEW
¶ 9. When reviewing a trial court’s denial or dismissal of a PCR motion, we will only disturb the trial court’s factual findings if they are clearly erroneous; however, we review the trial court’s legal conclusions under a de novo standard. Hughes v. State, 106 So.3d 836, 838 (¶ 4) (Miss.Ct.App.2012). We apply the requirements of Uniform Rule of Circuit and County Court 7.09 on a case-by-case basis. McCain v. State, 81 So.3d 1055, 1062 (¶ 16) (Miss.2012).
DISCUSSION
¶ 10. Cliff argues that the trial court erred when it allowed the State to amend the indictment to charge him as a habitual offender after the State rested its case-in-chief. Cliff cites to Uniform Rule of Circuit and County Court 7.09, which provides:
All indictments may be amended as to form but not as to the substance of the offense charged. Indictments may also be amended to charge the defendant as [a] habitual offender or to elevate the level of the offense where the offense is one which is subject to enhanced punishment for subsequent offenses and the amendment is to assert prior offenses justifying such enhancement (e.g., driving under the influence, Miss.Code Ann. § 63-11-30). Amendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised.
Cliff acknowledges that the assistant district attorney (ADA) informed Cliffs counsel several days before the trial that the State intended to amend the indictment, but Cliff nonetheless asserts that he failed to receive notice or have a fair opportunity to defend against the amendment.
¶ 11. Cliff also asserts that his PCR motion was properly before the trial court. The trial court dismissed Cliffs PCR motion, explaining that the supreme court found in Hensley I that the State timely and properly amended Cliffs indictment, and thus this “established the law of the case.” However, Cliff argues that the issue presented in his PCR motion is different than that presented on direct appeal in Hensley I. In Hensley I, Cliff indeed raised a different ground on appeal wherein he asserted that his sentence as a habitual offender constituted an improper sentence for his conviction under the Mississippi Code sections identified in his indictment, but the Mississippi Supreme Court’s opinion nonetheless reflects its finding upon its review that the State timely moved to have Cliff deemed a habitual offender for sentencing. Hensley I, 72 So.3d at 1070 (¶ 14).
¶ 12. In the appeal before this Court, the State asserts that on April 29, 2010, twelve days prior to the trial, the ADA delivered copies of a motion to amend the indictment to Cliffs counsel, along with abstracts of the three prior convictions the State intended to use to enhance the sentence. The ADA told Cliffs counsel that the State intended to file the motion to amend the indictment and to seek to have Cliff sentenced as a habitual offender if Cliff chose not to plead guilty and went to trial. Pretrial, Cliffs counsel met with Cliff that day and engaged in several conversations with him, advising Cliff of the ADA’s intentions and explaining the sentencing consequences that would occur if Cliff received an enhanced sentence.
¶ 13. In Gowdy v. State, 56 So.3d 540, 541-42 (¶ 1) (Miss.2010), the supreme court held that the post-conviction amendment of defendant Gowdy’s indictment to *350 include habitual-offender status “was prohibited” where the State filed the motion to amend on the morning of the sentencing hearing, two months after the conviction. In Gowdy, the State informed the trial court on the day after Gowdy’s conviction that it had received notice of Gowdy’s pri- or convictions in a different jurisdiction. Id. at 545 (¶ 15). The State then filed the motion to amend two months later. Id. at 541-42 (¶ 1). Upon review, the supreme court ultimately vacated the enhanced portion of Gowdy’s sentence and remanded the case for resentencing. Id. at 546 (¶ 24). The supreme court recognized that Rule 7.09 “does not speak to the timing of the amendment, only that the defendant must be ‘afforded a fair opportunity to present a defense’ and ‘not be unfairly surprised.’ ” Gowdy, 56 So.3d at 545 (¶ 16).
¶ 14. In Boyd v. State, 113 So.3d 1252, 1256 (¶ 12) (Miss.2013), the supreme court further clarified that “adequate notice is achieved through formal pleadings which include the specific amendment to be offered and which are filed sufficiently in advance of trial to ensure that a defendant will have a ‘fair opportunity to present a defense’ and will not be ‘unfairly surprised.’ ” The Boyd court found inadequate notice where the State informed the defendant “during pretrial proceedings on the morning of trial that, if a conviction was obtained, the State would seek to sentence him as a subsequent offender.” Id.
¶ 15. Applying the requirements set forth in Gowdy, this Court has found that a defendant “had sufficient pretrial notice of the habitual-offender charge, including the prior convictions relied on by the State” where the motion to amend the indictment was filed six days prior to trial. Newberry v. State, 85 So.3d 884, 891 (¶ 17) (Miss.Ct.App.2011); see also McCain v. State, 81 So.3d 1055, 1062 (¶ 15) (Miss.2012) (The supreme court held where the motion to amend the indictment was filed seven months prior to trial, the defendant received fair notice, was not “unfairly surprised” by the habitual-offender addition, and was “afforded a fair opportunity to present a defense.”); Ellis v. State, 469 So.2d 1256, 1258 (Miss.1985) (The supreme court held that it is permissible to amend the indictment on the date of trial to reflect a defendant’s habitual-offender status, when defense counsel is aware of the State’s intentions and the defendant is fully aware of the State’s intentions during plea negotiations.).
¶ 16. Cliff bears the burden of proving that he was unfairly surprised by the amendment to the indictment. Williams v. State, 522 So.2d 201, 209 (Miss.1988) (A PCR movant “bears the burden of presenting a record which is sufficient to under-gird his assignments of error.”). Turning to review the record before us, we find that the record contains the March 3, 2013 affidavit of Cliffs trial counsel, Nicholas Bain, wherein Bain attested that on April 29, 2010, he received a copy of a motion to amend Cliffs indictment to reflect Cliffs status as a habitual offender pursuant to section 99-19-81. Bain stated that he. examined the motion and the copies of the abstracts of Cliffs prior convictions. Bain affirmed that during the trial, the motion to amend was filed and presented to the trial court following the presentation of the State’s case on May 12, 2010. Bain stated that he entered an objection to the motion on the ground that the amendment sought was one of súbstance rather than form, but explained that he had no other objections or plausible defenses to the motion. Bain stated that he “had ample time” to object to the motion to amend the indictment, if other grounds to do so had existed. Bain confirmed that prior to the trial, he “had several discussions with [Cliff] concerning *351 the ramifications of the motion and the consequences concerning sentencing” if the jury convicted Cliff as a habitual offender. The record reflects Cliff received sufficient pretrial notice of the State’s motion and its intent to amend his indictment to charge him as a habitual offender.
¶ 17. Having found that the State provided Cliff sufficient notice of its motion and intent to aménd the indictment herein, we also find Cliff has failed to demonstrate that he was denied the opportunity to present a defense to his habitual-offender status or the prior offenses establishing such status. In his brief, Cliff simply claims he “could not know if the State would be able to acquire the exemplification and certification of his out-of-state convictions necessary to sustain the motion.” In Lamb v. State, 124 So.8d 84, 86 (¶ 4) (Miss.Ct.App.2013), this Court explained that “sentencing enhancements are determined by the court after the guilt phase of the trial.” The Lamb court determined that “[c]harging Lamb as a habitual offender did not affect the substance of the crime of which he was charged, but only the sentencing.” Id. (citing Adams v. State, 772 So.2d 1010, 1020 (¶ 49) (Miss.2000)). This Court ultimately held that the “timing of the amendment relative to the guilt phase of the trial does not bear on Lamb’s ability to prepare a defense to the sentencing enhancement.” Id.
¶ 18. In the recent supreme court case of Williams v. State, 131 So.3d 1174, 1177 (¶ 11) (Miss.2014), the supreme court found that the defendant received sufficient notice where the State filed its motion to amend the indictment three days prior to trial to reflect the defendant’s habitual-offender status under section 99-19-81. The supreme court noted that the State’s motion specifically provided the details of Williams’s prior convictions, including the cause numbers, dates, and courts in which the convictions were obtained. Williams, 131 So.3d at 1177 (¶ 9). The notice provided by the State in the instant case shows that Cliff also received sufficient pretrial notice of the State’s intent to file a motion to amend the indictment. Furthermore, we recognize that in Cliffs direct appeal, Hensley I, the supreme court stated that “[t]he State timely moved to deem Cliff a habitual offender based on his prior felony convictions.” Hensley I, 72 So.3d at 1070 (¶ 14).
¶ 19. In conclusion, Cliffs assertion that the State failed to provide adequate notice of its intent to seek enhanced punishment for Cliff as a habitual offender under 99-19-81 lacks merit, and Cliff failed to show that he lacked the opportunity to present a defense to his habitual-offender status or the prior offenses used to establish such status. Accordingly, we find no error in the trial court’s dismissal of Cliffs PCR motion.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF TISHOMINGO COUNTY DISMISSING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING, P.J., BARNES, ISHEE AND JAMES, JJ., CONCUR. MAXWELL, J., CONCURS IN PART AND IN THE RESULT WITH SEPARATE WRITTEN OPINION, JOINED BY GRIFFIS, P.J., ROBERTS AND FAIR, JJ.; IRVING, P.J., AND JAMES, J., JOIN IN PART. ROBERTS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.

. In Cliff Hensley’s prior direct appeal to the Mississippi Supreme Court, Hensley I, the supreme court refers to him as "Cliff” throughout the opinion. In this opinion, we also refer to him as Cliff for the sake of continuity with the previous opinion.

. Per the facts of Hensley I, Officer Palmer helped create a list for the State Line Narcotics Task Force of individuals who were known to cross state lines to purchase pseu-doephedrine. This list was placed at pharmacies, and the pharmacists or pharmacy technicians would contact the task force when an individual on the list bought pseudoephed-rine. Jeff Hensley’s name appeared on this list.

. Hensley filed an application for leave to proceed in the trial court, alleging that his right to due process was violated when his indictment was amended during his trial to charge him as a habitual offender. On December 13, 2012, the Mississippi Supreme Court granted Hensley’s application for leave to proceed in the trial court.