# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-00780-COA

LUCAS EDWARDS A/K/A LUCAS LORENZO
EDWARDS

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

DATE OF JUDGMENT: 03/09/2017
TRIAL JUDGE: HON. MARGARET CAREY-McCRAY
COURT FROM WHICH APPEALED: SUNFLOWER COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT: OFFICE OF STATE PUBLIC DEFENDER
BY: MOLLIE MARIE McMILLIN
LUCAS EDWARDS (PRO SE)
ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL
BY: ABBIE EASON KOONCE
DISTRICT ATTORNEY: WILLIE DEWAYNE RICHARDSON
NATURE OF THE CASE: CRIMINAL - FELONY
DISPOSITION: AFFIRMED - 05/12/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE J. WILSON, P.J., GREENLEE AND LAWRENCE, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1. On April 20, 2015, Lucas Edwards was indicted by a Sunflower County grand jury

for possession of a firearm by a felon.[1] On September 27, 2016, the State made a motion to

---

[1] The original indictment charged Edwards with five separate crimes. The record indicates that on October 3, 2016, the court granted the State's request to nolle prosequi Count I, sexual battery, Count II, rape, and Count V, accessory after the fact, because the victim was then married to Edwards. Likewise on October 19, 2016, the court entered a nolle prosequi dismissing Count III of the indictment (aggravated assault on a law enforcement officer). At the time of trial, Edwards's indictment charged him with the possession of a firearm by a felon.

amend the indictment to charge Edwards as a habitual offender in accordance with Mississippi Code Annotated section 99-19-81 (Rev. 2015). Additionally, on October 14, 2016, the State gave notice that it would seek a firearm sentencing enhancement in accordance with Mississippi Code Annotated section 97-37-37(2) (Rev. 2015). Following a two-day trial, the jury returned a guilty verdict pursuant to Mississippi Code Annotated section 97-37-5 (Rev. 2014). The Sunflower County Circuit Court sentenced Edwards to two consecutive ten-year sentences as a nonviolent habitual offender. Edwards filed for a motion for a new trial, which the court denied.

¶2. Edwards appeals, raising the following issues: (1) the trial court erred in failing to grant a mistrial; (2) Edwards did not receive proper notice of the firearm sentencing enhancement; (3) Edwards did not receive proper notice that he was being charged as a habitual offender; and (4) Edwards did not receive effective assistance of counsel.[2] Finding no error, we affirm.

## FACTS

¶3. On October 10, 2014, at around 9:00 a.m., Officer Antoine Weeks, a police officer with the Indianola Police Department, received a call from dispatch that the subject of a felony warrant was riding a bicycle around South Davis Circle in Indianola, Mississippi. After arriving at the area, Officer Weeks noticed someone riding a bicycle, but once the

---

[2] The Office of Indigent Appeals filed a brief on Edwards's behalf and argued the first issue. Edwards raised the other issues in his pro se supplemental brief.

person saw the patrol car the individual took off through some houses. At that point, Investigator Jim Hammer heard that there was a foot pursuit involving the subject of a warrant who was headed toward a home at 202 South Davis Circle in Indianola, Mississippi. Investigator Hammer, along with Investigator Bennie Milton, Officer William Nevels, and Officer Marshall Hodge, proceeded to South Davis Circle.

¶4. Once the law enforcement officers arrived at the home, they asked the homeowner if they could search for Edwards. Investigator Hammer went into the home and did not see Edwards. He then went outside and circled around the house, where he saw Officer Nevels and Officer Hodge outside a shed door. As they were trying to open the shed door, two shots were fired from inside the shed. Officer Nevels testified that none of the officers fired their weapons. They retreated, and Investigator Hammer radioed dispatch to report that shots had been fired at that address.

¶5. Approximately thirty minutes after shots were fired from inside the shed, the Sunflower County Sheriff, James Haywood, arrived. Sheriff Haywood testified that he went to the scene because he received a call that "the police department [was] gonna kill Lucas Edwards" and that he needed to come immediately. The record indicates that the sheriff had a personal relationship with Edwards. Sheriff Haywood, who had training as a hostage negotiator, talked with Edwards by cellular telephone. According to the sheriff, he believed no one else was inside of the shed because he did not hear anyone else on the phone. Edwards never told Sheriff Haywood that anyone else was inside the shed. After two hours

3

of negotiations, Edwards opened the door to the shed, threw out the .44-caliber handgun, and surrendered.

¶6.    Mike Hood, a forensic section chief with the Mississippi Forensic Laboratory, testified at trial that the crime lab was unable to find any latent prints on the pistol with enough detail for a comparison analysis.  Hood told the jury that although the crime lab was unable to find a print, such inability was not unusual because "most of the prints on weapons don't develop because the gun is made to repel the moisture of a print."  Starks Hathcock, a forensic scientist specializing in firearms and tool-mark identification, testified that the shell casings found in the shed had been ejected from the same gun that was collected from Edwards at the scene.

¶7.    After hearing all of the evidence, the jury returned a guilty verdict.  Edwards appeals.

**ANALYSIS**

1.    **The trial court did not commit error by not ordering a mistrial sua sponte.**

¶8.    On the first day of trial, an in-chambers conference occurred among the court, Edwards, Edwards's attorney, the prosecutor, and the attorney for Neshawndra Sims, Edwards's wife and the victim in the dismissed counts.  During the phone conference, Sims stated under oath that she and Edwards were separated and that she would not come back to testify for him.  Sims explained that she "was about to make a mistake and take the stand and try to lie for [Edwards] and help [Edwards] . . . to help him to be free or whatever, but [she] chose not to do that. . . .  [She] was gonna lie for him."  The circuit judge then asked the

4

attorneys if they had any questions for Sims, and they each said, "no."

¶9.     After the prosecution rested, Edwards testified that Sims was in the shed with him. He stated that she fired the gun and threw it out of the shed.[3]  Edwards alleges error in the following exchange on Edwards's cross-examination by the State:

Q.     Where is your wife, is she here today?

A.     She ran off.

Q.     When did she run off?

A.     Thursday of last week.

Q.     And you, me, your attorney[,] and the Judge had a conversation with her back in the Judge's chambers yesterday, didn't we?

A.     Yes, sir, we did.

Q.     And you recognized her voice, didn't you?

A.     Yes, sir, I did.

Q.     Do you remember her telling the Judge that she wasn't gonna testify for you because you wanted her to lie for you and she wasn't gonna lie for you?

A.     All out of anger, sir.

Q.     Huh?

A.     She said all that out of anger.  I got texts where she texted me saying why she did it.

Q.     I didn't ask you about texts you got.

_____

[3] The police searched the area and did not find anyone else in the shed.

A. Okay. But she did all that out of anger.

Q. We were back here in chambers and she said she wasn't gonna testify and lie for you, right?

A. She did say that.

Q. And that's why she isn't here today, is it?

A. No, sir. She gave her testimony months or probably a year ago.

Q. No, sir. We're not talking about testimony she might have given at some other time. I'm talking about back there in Judge's chambers.

. . . .

Q. But she told us yesterday she wasn't gonna be here and testify and lie for you and that's what you tried to get her to do, right?

A. Yes, sir.

Edwards's trial counsel never objected. Edwards claims that this line of questioning was hearsay and that it should have resulted in a mistrial even though his attorney did not object or request a mistrial.

¶10. This Court reviews the grant or denial of a mistrial under an abuse of discretion standard of review. *Wilson v. State*, 102 So. 3d 1200, 1205 (¶20) (Miss. Ct. App. 2012). When considering whether to sua sponte declare a mistrial:

[Caselaw] unequivocally holds that the trial judge is in the best position for determining the prejudicial effect of an objectionable remark. The judge is provided considerable discretion to determine whether the remark is so prejudicial that a mistrial should be declared. Where serious and irreparable damage has not resulted, the judge should admonish the jury then and there to disregard the impropriety.

6

*Id*. at 1205-6 (¶20) (quoting *Edwards v. State*, 856 So. 2d 587, 593 (¶19) (Miss. Ct. App. 2003)).

¶11.   On appeal, Edwards argues that the trial court committed error by not sua sponte ordering a mistrial after the State inquired about the conversation in chambers.  Specifically, Edwards claims this deprived him of a fair trial and due process of law.  However, Edwards never asked for a mistrial nor was there any objection to the line of questioning which he now claims should have resulted in a mistrial.  It is well-established that "issues not presented to the trial court for lack of contemporaneous objection are procedurally barred, and error, if any, is waived.'" *Goff v. State*, 14 So. 3d 625, 655 (¶118) (Miss. 2009) (citing *Wells v. State*, 903 So. 2d 739, 742 (¶6) (Miss. 2005)).  As Edwards admits, he never requested a mistrial or made any objection during that portion of his cross-examination. Consequently, this issue is procedurally barred.

¶12.   Procedural bar notwithstanding, Edwards's argument has no merit.  "Mistrials should only be declared sua sponte when manifestly necessary." *Arrington v. State*, 267 So. 3d 753, 758 (¶17) (Miss. 2019).  The Mississippi Supreme Court "has recognized several examples where a declaration of a mistrial would likely be a manifest necessity: failure of a jury to agree on a verdict; biased or otherwise tainted jury; improper separation of the jury; where jurors failed to follow instructions." *Id*. (quoting *Spann v. State*, 557 So. 2d 530, 532 (Miss. 1990)).  After review, we cannot find that Edwards's testimony on cross-examination rises to this level.  Accordingly, we find that there is no error in the trial court's failing to grant

a mistrial sua sponte.

**2.  Edwards received proper notice of the sentencing enhancement.**

¶13.    Edwards next argues that he did not receive sufficient notice that the State intended to seek a sentence enhancement per section 97-37-37(2) because it was not mentioned in his indictment.  Section 97-37-37(2) reads as follows:

> Except to the extent that a greater minimum sentence is otherwise prohibited by any other provision of law, any convicted felon who uses or displays a firearm during the commission of any felony shall, in addition to the punishment provided for such felony, be sentenced to an additional term of imprisonment in the custody of the Department of Corrections of ten (10) years, to run consecutively, not concurrently, which sentence shall not be reduced or suspended.

The State filed a Notice to Request Enhanced Penalty on October 14, 2016.  Edwards's jury trial was held in March 2017.

¶14.    "Whether a defendant received fair notice of a sentence enhancement is a question of law that we review de novo."  *Sallie v. State*, 155 So. 3d 760, 762 (¶7) (Miss. 2015) (citing *Williams v. State*, 131 So. 3d 1174, 1176-77 (¶6) (Miss. 2014)).  This Court has stated that:

> No [caselaw] requires that an indictment include an actual reference to the sentence enhancement; rather, federal and Mississippi jurisprudence only require that an indictment include the *facts* involved in such an applicable sentence enhancement, such that those facts are required to be proven beyond a reasonable doubt.

*Dortch v. State*, 231 So. 3d 1017, 1021 (¶11) (Miss. Ct. App. 2017).

¶15.    Here, Edwards's indictment included the facts necessary to support the sentence enhancement.  Count III of the indictment charged Edwards with aggravated assault of a law

8

enforcement officer "by shooting at him with a deadly weapon, to-wit: a pistol," and Count IV charged him with "possession of a firearm, to-wit: a pistol" by a convicted felon. Further, Edwards's convicted felon status was stipulated to by the parties at trial. The pistol that was allegedly used by Edwards to shoot at the officer was the same pistol that Edwards was alleged to possess. So "[u]pon receiving his indictment, [Edwards] knew or should have known that the firearm enhancement was a possibility with respect to the particular crime[s] for which he was charged." *Id*. at (¶12).

### 3. Edwards received proper notice that he was being charged as a habitual offender.

¶16. Edwards argues that he was not properly notified that the State planned to charge him as an habitual offender. Edwards was originally indicted on April 20, 2015. On September 27, 2016, the State filed a motion to amend the indictment in order to charge Edwards as a habitual offender pursuant to section 99-19-81. The motion specifically listed Edwards's two prior convictions—attempted grand larceny and grand larceny—that made him eligible for habitual-offender status. The record contains no response from Edwards to the State's motion. That motion was granted on November 4, 2016. The court held Edwards's trial on March 7 and March 8, 2017. At sentencing, Edwards made no objections to Exhibits S-9 and S-10 which were the sentencing orders and a pen pack from the Mississippi Department of Corrections showing his previous convictions and how long he was incarcerated. He also made no argument during sentencing.

¶17. In *Boyd v. State*, the Mississippi Supreme Court clarified that "adequate notice is

achieved through formal pleadings which include the specific amendment to be offered and which are filed sufficiently in advance of trial to ensure that a defendant will have a 'fair opportunity to present a defense' and will not be 'unfairly surprised.'" *Hensley v. State*, 156 So. 3d 346, 350 (¶14) (Miss. Ct. App. 2014) (quoting *Boyd*, 113 So. 3d 1252, 1256 (¶12) (Miss. 2013)). The State's motion included the "specific amendment" that had been filed approximately five months before trial. In *Hensley*, 156 So. 3d at 350 (¶15), this Court explained that our appellate courts have found sufficient notice when amendments were filed days before trial, months before trial, and even on the first day of trial.[4] Accordingly, we find that Edwards received sufficient notice of the State's intention to charge him as a habitual offender.

### 4. Edwards did not receive ineffective assistance of counsel.

¶18. Lastly, Edwards claims that he received ineffective assistance of counsel based on his attorney's failure to challenge the State's request to amend the indictment to include a firearm enhancement and habitual-offender status. The Mississippi Supreme Court recently reiterated that ineffective-assistance-of-counsel claims may be resolved on direct appeal "when the record affirmatively shows that the claims are without merit." *Ross v. State*, 288 So. 3d 317, 324 (¶29) (Miss. 2020). In *Stringer v. State*, 454 So. 2d 468, 476 (Miss. 1984), the Mississippi Supreme Court adopted the *Strickland v. Washington*[5] two-part test for

---

[4] We recognize that Mississippi Rule of Criminal Procedure 14.1(b)(2), which became effective July 2017, now requires defendants receive at least thirty days' notice.

[5] *Strickland v. Washington*, 466 U.S. 668 (1984).

determining the validity of ineffective assistance of counsel claims. "A successful claim requires a defendant to put forth sufficient evidence which, when viewed under the totality of the circumstances, proves: 1) the defense attorney's performance was deficient and 2) the deficiency prevented the defendant from receiving a fair trial." *Havard v. State*, 94 So. 3d 229, 239 (¶33) (Miss. 2012) (footnote and internal quotation marks omitted) (emphasis added).

¶19. Edwards offers no argument or proof as to exactly what objection his attorney should have made in an effort to prevent his past criminal convictions from being used against him. Apparently, Edwards wanted his attorney to somehow, through an objection, erase his criminal past, so he would not be held accountable for his continued felony violations of Mississippi law. The State provided sufficient notice at least five months before trial of its intent to seek the firearm enhancement allowed by statute and have the habitual offender law apply if Edwards were convicted. The State also introduced the necessary and proper exhibits demonstrating Edwards's prior convictions. Therefore, Edwards's attorney's failure to object does not rise to ineffective assistance of counsel, and this issue is without merit.

¶20. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD, McCARTY AND C. WILSON, JJ., CONCUR.**