ISHEE, J.,
 

 for the Court:
 

 ¶ 1. Billy Glen Stewart appeals his convictions of Counts I, II, and III of sale of cocaine, and three separate sentences of sixty years each in the custody of the Mississippi Department of Corrections (MDOC) as a habitual offender, without eligibility for probation or parole, with the sentences in Counts II and III to run concurrently with the sentences in Count I. Stewart argues on appeal that the Leake County Circuit Court erred by (1) enhancing his sentence under Mississippi Code Annotated section 41-29-147 (Rev.2009) and Mississippi Code Annotated section 99-19-81 (Rev.2007) and (2) denying his motion for a directed verdict, request for peremptory instruction, and motion for a new trial. Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On May 5, May 6, and May 24, 2005, the Leake County Sheriffs Department organized sting operations to catch drug dealers in Leake County. They used a confidential informant, Larry Gardner, to arrange drug buys with dealers in the area. Gardner, a former addict, professed to know many of the dealers in the area and offered to arrange a meeting with Stewart, whom he claimed was a well-known drug dealer. Law-enforcement officials agreed to monitor Gardner over several days while he met with alleged drug dealers.
 

 ¶ 3. On the day of each drug buy, law-enforcement officials would wire Gardner with a video camera and audio device before each meeting with prospective dealers. The officers were not able to view the video until after the transactions took place, but they were able to monitor the meetings through live radio transmissions. Gardner met with Stewart on May 5, May 6, and May 24, 2005. During each.of these meetings, the team was able to-hear the conversations between Gardner and Stewart, and later the team was able to view the transactions. The audio and video recordings reflected Gardner purchasing cocaine from Stewart.
 

 ¶ 4. On February 22, 2006, Stewart was indicted on three counts of selling cocaine to a confidential informant. The indictment charged Stewart as a second drug offender and also as a habitual offender due to Stewart’s previous convictions for selling marijuana. The indictment listed each count separately for each alleged drug sale, and it charged Stewart “did willfully, feloniously and knowingly sell and deliver to Mississippi Bureau of Narcotics Confidential Informant # 95-110 ... a Schedule II controlled substance, namely cocaine, in Leake County.”
 

 
 *831
 
 ¶ 5. Stewart was convicted of the first offense of selling marijuana on May 16, 1989, and sentenced to serve two and a half years in custody of the MDOC. He was convicted of the second offense of selling marijuana on January 14,1991, and again sentenced to serve two and a half years in the custody of the MDOC.
 

 ¶ 6. At the trial for the present charges of selling cocaine, Leake County Sheriff Greg Waggoner testified that he was part of the surveillance team for each of the cocaine sales on May 5, May 6, and May 24, 2005. He named Gardner as the confidential informant and noted that Officer Clay McCombs was also part of the surveillance team.
 

 ¶ 7. Officer McCombs, a narcotics investigator with the sheriffs department, testified that before each buy, he would conduct a pre-buy meeting with Gardner. During the pre-buy meetings, he would search Gardner and his vehicle to ensure Gardner was not carrying any contraband. He would then give Gardner money to purchase drugs. Officer McCombs stated that he wore a wire the entire time during the pre-buy meeting. After Gardner met with the prospective dealers, Officer McCombs would then conduct a post-buy meeting, and he would again search Gardner. Officer McCombs wore a wire during the post-buy meetings as well. Officer McCombs was present on all three of the days that Gardner met with Stewart. He testified that along with Sheriff Waggoner, they followed Gardner on May 5, 2005, after the pre-buy meeting and watched him as far as they could. They drove to Stewart’s home, outside of the city limits, but Officer McCombs stopped his vehicle before they reached Stewart’s home. Officer McCombs stated that over an external microphone mounted in his car, he heard Gardner stop his own car, walk to the house, and engage in conversation with Stewart. Officer McCombs heard Gardner say that he needed “fifty’s worth,” and after a brief conversation, Gardner left Stewart’s home. Shortly afterwards, Officer McCombs met with Gardner for the post-buy meeting, where he retrieved crack cocaine from Gardner. He also searched Gardner again and took Gardner’s statement as to what occurred during the meeting with Stewart. Officer McCombs later turned over the DVD of the video recording, as well as an audio recording of the buy to the sheriffs department, and he submitted the crack cocaine to the Mississippi Crime Laboratory (crime lab) for testing.
 

 ¶8. During the second transaction on May 6, 2005, Officer McCombs testified that he again conducted a pre-buy meeting with Gardner, which was identical to the first pre-buy meeting. Gardner again went to Stewart’s home, but this time another man was present — Sidney Leflore. Gardner spoke with Leflore, left Stewart’s house, and traveled to McGivney Hardware Store, just inside the city limits of Carthage, Mississippi. Officer McCombs and Sheriff Waggoner continued their surveillance, and they witnessed Gardner approach Stewart in the hardware store’s parking lot and speak to him. Gardner then got back in his vehicle and followed Stewart back to Stewart’s home. Officer McCombs stated the he heard Gardner engage in a conversation with Stewart at the house and then leave. Officer McCombs later met Gardner for the post-buy meeting; and after searching Gardner’s person and vehicle, Gardner gave the officer a package of crack cocaine that he said he had purchased from Stewart. Officer McCombs again turned the video and audio recordings over to the sheriffs department and submitted the cocaine to the crime lab for testing.
 

 
 *832
 
 ¶ 9. During the third meeting on May 24, 2005, Officer McCombs conducted a pre-buy meeting with Gardner, which was identical to the previous meetings. Officer McCombs and Sheriff Waggoner followed Gardner in their vehicle and conducted surveillance through the external microphone in the car. At this meeting, Officer McCombs heard Gardner say he needed, “fifty’s worth,” but he did not hear the other person in the conversation. Gardner left the house and met with Officer McCombs and Sheriff Waggoner for the post-buy meeting. Gardner again presented crack cocaine to Officer McCombs and stated that he had purchased it from Stewart. Officer McCombs sent the video and audio recordings to the sheriffs department and submitted the bag of cocaine to the crime lab for testing.
 

 ¶ 10. Gardner also testified at trial. He corroborated Officer McCombs’s statement of the events that took place, and he identified each of the three bags of cocaine as being those which he had purchased from Stewart during the three separate meetings. Gardner also identified the video recordings as being true and correct representations of each of the sales of cocaine by Stewart, identified Stewart as being the person seen and heard on the video, and also identified Stewart as the person who had sold him the crack cocaine.
 

 ¶ 11. Leflore, who was present at Stewart’s home during the May 6, 2005 meeting testified that he was at Stewart’s house that day to complete some remodeling work for Stewart. Leflore answered the door at Stewart’s house and told Gardner that Stewart was at the hardware store; Gardner then left. He later saw Gardner return with Stewart, and he witnessed Gardner give money to Stewart. He saw Stewart go into another room and come back with a bag of cocaine, which Stewart then gave to Gardner.
 

 ¶ 12. On January 17, 2007, a Leake County jury convicted Stewart of all three counts of the sale of cocaine. For Count I, Stewart was sentenced to serve sixty years in the custody of the MDOC as a habitual offender, without eligibility for probation or parole. For Counts II and III, Stewart was also ordered to serve sixty years in the custody of the MDOC as a habitual offender, without eligibility for probation or parole. The sentences in Counts II and III were ordered to run concurrently with the sentence in Count I.
 

 DISCUSSION
 

 I. Enhancement Statute for Sentencing
 

 ¶ 13. Stewart argues that the circuit court improperly used the same prior convictions for two separate enhancements of the same sentence, thereby twice enhancing the punishment for the offense, in violation of the double-jeopardy prohibition of the Fifth Amendment to the United States Constitution. He claims that the circuit court improperly enhanced his sentence once under section 41-29-147 of the Mississippi Code Annotated as a second or subsequent drug offender and also under section 99-19-81 as a habitual offender.
 

 ¶ 14. Stewart cites no case law to support this theory. It is well settled that “the failure to cite authority in support of an argument eliminates our obligation to review the issue.”
 
 Glasper v. State,
 
 914 So.2d 708, 726 (¶ 40) (Miss.2005) (citations omitted).
 

 ¶ 15. Notwithstanding this procedural bar, we will briefly discuss Stewart’s claim of improper sentence enhancement and habitual-offender status. Stewart was convicted of three separate violations under Mississippi Code Annotated section 41-29-139(a)(1) (Rev.2009) for the sale of cocaine. The statutory maximum penalty for this
 
 *833
 
 crime is thirty years. Miss.Code Ann. § 41—29—139(b)(1) (Rev.2009). He received an enhanced sentence, which doubled the thirty-year sentence to sixty years, due to the fact that Stewart also had two prior convictions for the sale of marijuana. Section 41-29-147 allows for enhancement of a convicted criminal’s sentence up to twice the statutory maximum. A conviction of the sale of cocaine qualifies as a second or subsequent offense when a defendant had a previous conviction for the sale of marijuana.
 
 Id.
 

 ¶ 16. Likewise, section 99-19-81 mandates that persons convicted of two previous felonies and who were convicted to separate terms of one year or more in any state or federal penal institution, “shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.” Sentencing a criminal under the habitual-offender statute is mandatory if the criminal meets the statutory requirements.
 
 Id.
 
 Double jeopardy only “applies to successive prosecutions for the same criminal offense.”
 
 White v. State,
 
 702 So.2d 107, 109 (¶ 10) (Miss.1997) (citing
 
 United States v. Dixon,
 
 509 U.S. 688, 694, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993)).
 

 ¶ 17. Stewart had already served time in prison for selling marijuana—once in 1989 and again in 1991. For each of those separate convictions, he was sentenced to serve two and a half years in the custody of the MDOC. In 2007, Stewart was convicted of three separate counts of selling cocaine. The sentences imposed for these crimes do not punish Stewart for his previous crimes of selling marijuana. Rather, those prior convictions were only used to enhance his current sentences for selling cocaine. “Prior convictions which are ‘constitutionally valid in and of themselves’ may appropriately be used to enhance punishment for subsequent convictions.”
 
 Horn v. State,
 
 825 So.2d 725, 727 (¶ 16) (Miss.Ct.App.2002) (citing
 
 Bailey v. State,
 
 728 So.2d 1070, 1072 (¶ 12) (Miss.1997)). We find that each of Stewart’s convictions satisfy the statutory requirements for habitual-offender status and enhanced sentencing. Accordingly, Stewart’s argument is without merit.
 

 II. Directed Verdict, Peremptory Instruction, and Motion for New Trial
 

 ¶ 18. Stewart next argues that the evidence was insufficient to prove that he sold cocaine to the confidential informant listed in the indictment. Stewart references the indictment that accused him of selling cocaine to “Mississippi Bureau of Narcotics Confidential Informant # 95-110.” Stewart admits that the evidence at trial proved that he sold cocaine three times to Gardner, but no evidence was presented to prove that Gardner and confidential informant # 95-110 were the same person or that Stewart made any drug sales to the “confidential informant.” Stewart claims that this failure by the State to prove the connection constitutes reversible error. We disagree.
 

 ¶ 19. The decision to grant or deny a motion for a new trial is within the sole discretion of the circuit court.
 
 Hill v. State,
 
 912 So.2d 991, 995 (¶ 25) (Miss.Ct.App.2004). We utilize an abuse-of-discretion standard of review in determining whether a new trial should be granted, and a new trial is only warranted if “the verdict is so contrary to the overwhelming weight of the evidence that failure to grant the motion [for a new trial] would result in unconscionable injustice.”
 
 Id.
 
 All evidence must be viewed in the light most “consistent with the verdict.”
 
 Id.
 

 
 *834
 
 ¶ 20. A directed verdict tests the sufficiency of the evidence.
 
 Bush v. State,
 
 895 So.2d 836, 843 (¶ 16) (Miss.2005). The standard of review for a request for a peremptory instruction and directed verdict is the same.
 
 Easter v. State,
 
 878 So.2d 10, 21 (¶ 36) (Miss.2004). If the “facts and inferences considered ... point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty,” then we will reverse the conviction.
 
 Bush,
 
 895 So.2d at 843 (¶ 16). The prosecution receives the benefit of all “favorable inferences that may be reasonably drawn from the evidence,” to support the verdict.
 
 Smith v. State,
 
 839 So.2d 489, 495 (¶ 11) (Miss.2003).
 

 ¶ 21. Stewart readily admits that the State proved that he sold drugs to Gardner on three separate occasions. Yet Stewart claims that the proof failed to show that Gardner was the same person referenced in the indictment and that the absénce of proof was a defect which entitles him to a reversal.
 

 ¶ 22. While the indictment did not specifically name Gardner as confidential informant # 95-110, the witness testimony clearly proved that confidential informant # 95-110 was Gardner. Sheriff Waggoner stated that Gardner was the confidential informant used in the drug buys with Stewart. Officer McCombs confirmed that Gardner was the confidential informant, and he went into detail concerning the surveillance efforts used to ensure that Gardner was, in fact, the person who had purchased cocaine from Stewart. Moreover, Gardner himself testified that he had acted as the confidential informant and purchased drugs from Stewart on three separate occasions.
 

 ¶ 23. In addition, Stewart failed to raise this issue at trial. “[A]n appellant is not entitled to raise new issues on appeal that he has not first presented to the trial court for determination.”
 
 Bush,
 
 895 So.2d at 842 (¶ 13). Therefore, Stewart has waived his right to contest the proof of the confidential informant’s identity on appeal. While the prosecution should have either amended the indictment to conform to the proof presented at trial or confirmed the confidential informant’s identity during questioning as being the same person referred to in the indictment by an informant number, we do not see how Stewart was unfairly prejudiced. Accordingly, we find this issue is procedurally barred and without merit.
 

 ¶ 24. THE JUDGMENT OF THE LEAKE COUNTY CIRCUIT COURT OF CONVICTION OF COUNTS I, II, AND III, SALE OF COCAINE, AND SENTENCE OF SIXTY YEARS ON EACH COUNT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, ALL AS A HABITUAL OFFENDER, WITHOUT ELIGIBILITY FOR PROBATION OR PAROLE, WITH THE SENTENCES FOR COUNTS II AND III TO RUN CONCURRENTLY WITH THE SENTENCE FOR COUNT I, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEAKE COUNTY.
 

 LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. RUSSELL, J., NOT PARTICIPATING.