# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CP-00495-COA

JEFFREY COURTJAY JACKSON                              APPELLANT

v.

CHARLES R. MULLINS, INDIVIDUALLY AND          APPELLEES
IN HIS OFFICIAL CAPACITY AS CHAIRMAN
OF THE MISSISSIPPI BAR COMMITTEE ON
PROFESSIONAL RESPONSIBILITY; ROBERT
GLEN WADDLE, INDIVIDUALLY AND IN HIS
OFFICIAL CAPACITY AS DIRECTOR AND
COUNSEL OF THE MISSISSIPPI BAR
CONSUMER ASSISTANCE PROGRAM; MARK
McCLINTON; JAMES ANDREW YELTON,
INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY AS FAMILY MASTER OF PANOLA
COUNTY, MISSISSIPPI; AND LYNDSEY
(PANOLA COUNTY DHS)

| | |
|---|---|
| DATE OF JUDGMENT: | 04/22/2021 |
| TRIAL JUDGE: | HON. PERCY L. LYNCHARD JR. |
| COURT FROM WHICH APPEALED: | PANOLA COUNTY CHANCERY COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | JEFFREY COURTJAY JACKSON (PRO SE) |
| ATTORNEYS FOR APPELLEES: | CHARLIE GAINES BAKER |
| | REX MORRIS SHANNON III |
| | MARK McCLINTON (PRO SE) |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 06/21/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., LAWRENCE AND McCARTY, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     On May 3, 2019, Andrew Yelton served as a chancery court master in Jeffrey

Jackson's divorce proceedings. After the conclusion of the proceedings, Jackson filed a Mississippi Bar complaint against Yelton, which was investigated and handled by Bar employee Glen Waddle and Chairman of the Mississippi Bar Committee on Professional Responsibility Charles R. Mullins. The Mississippi Bar dismissed the claim against Yelton. On February 2, 2021, Jackson filed a complaint in Panola County, Mississippi, against Yelton; Waddle; Mullins; Mark McClinton, a Department of Human Services employee; and "Lyndsey," who is not identified by a last name or relationship to the allegations in the complaint or the record. Waddle and Mullins filed a motion to dismiss, and Yelton requested that the case be dismissed in his answer. On April 21, 2021, the trial court held a hearing on the motion to dismiss. That same day, the trial court entered an order granting the motion to dismiss with prejudice.

¶2. Jackson appealed, arguing (1) the court erred in granting the motion to dismiss because the appellees and the court "owed . . . [Jackson] the right to represent himself without the court being biased"; and (2) the "[i]mmunity doctrines enable government workers to prevent constitutional responsibility[,] . . . includ[ing] prosecutors, judges, legislators, and high-level officials." Upon review of the record, this court affirms the trial court's order granting the motion and dismissing Jackson's claims.

**FACTS**

¶3. On May 3, 2019, Yelton acted as a master in Panola County, Mississippi, for the divorce proceeding between Jackson and his wife, Linda Jackson (Linda). Yelton refused to sign off on two of Jackson's requests: (1) for his ex-wife Linda to "return to her maiden

name" and (2) to uphold an agreement made between Jackson and Linda for Jackson to pay Linda child support "directly each month." After the divorce proceedings concluded, Jackson filed a Mississippi Bar complaint against Yelton. Ultimately, the Mississippi Bar dismissed Jackson's complaint and took no further action.

¶4. On February 2, 2021, Jackson filed a complaint in the Panola County Chancery Court against Yelton, Waddle, Mullins,[1] McClinton,[2] and Lyndsey.[3] In his complaint, Jackson made six allegations. First, he alleged that all defendants were negligent. Jackson stated that all of the defendants "failed to uphold their oath to the Constitution of the United States." However, Jackson did not provide the elements of negligence. Instead, Jackson set out the elements of intentional infliction of emotional distress. Next, Jackson alleged that Yelton committed fraud by using a "name not found on the Roll of Attorneys and did not appear in his official capacity." Jackson also alleged that Mullins and Waddle were guilty of "aiding and abiding" because they "[k]nowingly allowed . . . Yelton . . . to continue to practice law, even though they had evidence of [Yelton] breaking the law." Jackson accused the Mississippi Department of Human Services (DHS) of harassment because DHS had

---

[1] Waddle is an employee of the Mississippi Bar and serves as the Director and Counsel of the Mississippi Bar Consumer Assistance Program. Mullins is a practicing attorney and served as the Chairman of the Mississippi Bar Committee on Professional Responsibility.

[2] McClinton was employed by the Mississippi Department of Human Services at the time of Jackson's lawsuit.

[3] Jackson alleged that Lyndsey worked at the Mississippi Department of Human Services. Jackson did not provide a last name for Lyndsey or how she was involved in this case.

3

"repeatedly and persistently sent threatening letters since [his] divorce. These letters have annoyed, alarmed and caused [him] substantial emotional distress as [he] has worried about the threats every day." Jackson also raised claims of treason and a deprivation of rights. Jackson did not specify which parties allegedly committed these acts. Jackson quoted sections of the United States Code to support these claims.

¶5. On April 1, 2021, Waddle and Mullins filed their answer. They also filed a motion to dismiss. In the motion to dismiss, they argued they were "immune from suit as a matter of law," and Jackson "has otherwise failed to state a claim against either of them, individually or in their respective official capacities." Jackson never filed a response to this motion.

¶6. On April 15, 2021, Yelton filed his answer. In his answer, Yelton requested that Jackson's complaint be dismissed. Specifically, Yelton stated that Jackson's complaint "fails to state a claim upon which relief can be granted, therefore, said [c]omplaint should be dismissed in accordance with Mississippi Rule of Civil Procedure 12(b)(6)."

¶7. On April 21, 2021, the chancery court held a hearing on the motion to dismiss. Later that day, the court entered its order granting the motion to dismiss. The court dismissed Jackson's claims with prejudice. The court also entered orders dismissing the Mississippi Bar, Mullins, Waddle, and McClinton[4] as parties. On April 22, 2021, the court issued orders

---

[4] The court stated that "pursuing legal action against [McClinton], in his private capacity, was improper."

dismissing Yelton and Lyndsey as parties.[5]

¶8. Jackson appealed the dismissals and presented the arguments stated above.[6] Upon review of the record, this Court affirms the trial court's orders dismissing Jackson's claims.

**STANDARD OF REVIEW**

¶9. This court reviews a trial court's decision to grant a motion to dismiss de novo. *Stubbs v. Stubbs*, 281 So. 3d 125, 126 (¶3) (Miss. Ct. App. 2019).

**ANALYSIS**

**I. The trial court was not biased.**

¶10. Jackson argues that "the trial court erred in granting summary judgment to Respondents because Respondents and the court owed it to petitioner the right to represent himself without the court being biased." Apparently, as best as can be determined, Jackson is arguing that the trial court judge should have recused himself because he was "biased." Specifically, Jackson states that the trial court judge was biased for six reasons:

> [1] Respondents owed petitioner a duty to not attempt to beat petitioner simply on technicalities. Proof of service is one of the ways that the court showed that it was biased against petitioner for attempting to represent himself.

---

[5] The court found that service of process on Lyndsey was not valid because it was not properly served on the Attorney General's office. Further, the court found that service of process could not be "accomplished in the present form of the Complaint since it does not properly identify the last name of the person to be served."

[6] Jackson also requested that this Court "reverse the trial court's decision to grant summary judgment and honor [his] motion to have [his] credit cleared, [his] ex-wife to go back to her maiden name, and to stop the harassment from MDHS." Additionally, Jackson seeks relief on appeal for the "emotional distress" he suffered. This is a court of appellate jurisdiction, not of general jurisdiction. Further, these issues were not raised in the trial court and therefore are procedurally barred from being considered on appeal. *See Stewart v. State*, 67 So. 3d 829, 832 (¶14) (Miss. Ct. App. 2011).

[2] [the trial court] denied me the right to have my own court reporter.

[3] From the moment I met with the court, wanting to represent myself, I encountered tremendous resistance.

[4] The [c]ourt clerks withheld information from me, that they routinely give to lawyers . . . . If I would ask for the same information, it quickly turns into legal advice.

[5] I was cut off by [the trial court judge]. Everything I tried to answer, or question was pushed to the side all because I was not speaking the correct language of the court. This was very condescending and rude.

[6] Showing up without a lawyer, I was singled out and labeled as "pro per" or "pro se."

Jackson never filed a motion to recuse, nor did he move for the judge to recuse himself at the April 21, 2021 hearing. Instead, at the hearing, the trial court informed Jackson, "There is no change of venue in chancery court with respect to the clerk. There is either a recusal request to change the judge, or there's a jurisdictional type venue that can be requested. What you were asking for is not available." Jackson responded, "Okay. Well, that jurisdiction and change is what I'm looking for." Later in the hearing, Jackson also requested that his case "be changed to the Supreme Court . . . ."

¶11. Canon 3 of the Mississippi Code of Judicial Conduct states that judges "should disqualify themselves in proceedings in which their impartiality might be questioned by a reasonable person knowing all the circumstances or for other grounds provided in the Code of Judicial Conduct or otherwise as provided by law . . . ." Miss. Code Jud. Conduct Canon 3E(1). Rule 1.11 of the Uniform Chancery Court Rules states, "A motion seeking recusal shall be filed with an affidavit of the party or the party's attorney setting forth the factual

6

basis underlying the asserted grounds for recusal and declaring that the motion is filed in good faith and that the affiant truly believes the facts underlying the grounds stated to be true." UCCR 1.11. Jackson failed to file a motion for recusal. Jackson also did not provide any affidavits stating the "factual basis underlying the asserted grounds for recusal." *See id*. Therefore, Jackson did not properly present a motion for recusal to the trial court.

¶12. Additionally, Jackson cites no authority on appeal to support his claim that the trial court judge should have recused himself. It is well established that "the failure to cite authority in support of an argument eliminates our obligation to review the issue." *Stewart v. State*, 67 So. 3d 829, 832 (¶14) (Miss. Ct. App. 2011) (quoting *Glasper v. State*, 914 So. 2d 708, 726 (¶40) (Miss. 2005)). Therefore, this issue is without merit.[7]

## II.   Yelton, Waddle, and Mullins are immune from suit.

¶13. Jackson argues that the "immunities" of Yelton, Waddle, and Mullins violated his constitutional rights because the immunities "prevent[ed] the court from examining the actual circumstances surrounding the . . . actions" of Yelton, Waddle, and Mullins.

¶14. Jackson sued Mullins and Waddle for alleged actions that occurred while they were both acting as officers of the Mississippi Bar in handling a complaint alleged against a member of the Bar in this State. This precise issue has not been addressed by this Court or the Mississippi Supreme Court. However, the Mississippi Supreme Court has held generally that "[d]isciplinary proceedings against an attorney are judicial in nature and absent a statute,

---

[7] The record indicates that the trial court judge questioned Jackson in an effort to understand what Jackson was seeking. The judge appeared cordial and accommodating to Jackson, who was representing himself.

under the common law, any person involved in the proceedings, whether a party, witness, counsel, or judge is accorded absolute immunity so long as the statements made or documents filed are reasonably related to the judicial inquiry." *Netterville v. Lear Siegler Inc.*, 397 So. 2d 1109, 1112 (Miss. 1981).

¶15.    Additionally, Mississippi Code Annotated section 73-3-345 (Rev. 2017) states, "The board of commissioners, the committee on complaints, the executive director, the complaint counsel, the complaint tribunals, and their assistants, staff and employees shall be immune from civil suit for any conduct arising out of the performance of their official duties." Miss. Code Ann. § 73-3-345; *cf. Lampton v. Diaz*, 661 F.3d 897, 901-02 (5th Cir. 2011) (holding that a member of the Commission on Judicial Performance was entitled to immunity under the statute for conduct arising out of the performance of his official duties).  Further, Rule 14 of the Rules of Discipline for the Mississippi Bar states, "[T]he officers of the Bar and all of the disciplinary agencies, and their assistants, staff, employees and receivers shall be immune from civil suit for any conduct arising out of the performance of their official duties."  Mullins and Waddle were performing their official duties when they dismissed Jackson's Bar complaint against Yelton.  Therefore, they were immune from any causes of action as a result of those job-related duties.

¶16.    Jackson sued Yelton for actions Yelton took while acting as a master in Panola County, Mississippi.[8]  Special masters can be appointed "to be masters of the court, and the

---

[8] It is unclear if Yelton was serving as a special master pursuant to Mississippi Rule of Civil Procedure 53 or a family master pursuant to Mississippi Code Annotated section 9-5-255 (Rev. 2019).  Yelton referred to himself as a "special master" in his answer to Jackson's complaint.  The chancellor, in dismissing the lawsuit against Yelton, referred to

court in which any action is pending may appoint a special master therein." M.R.C.P. 53(a). A court will issue an order that designates a special master. "Subject to the specifications and limitations stated in the order, the master has and shall exercise the power to regulate all proceedings in every hearing before him and to do all acts and take all measures necessary or proper for the efficient performance of his duties under the order." M.R.C.P. 53(d). Additionally, pursuant to Mississippi Code Annotated section 9-5-255, a senior judge may "apply to the Chief Justice of the Supreme Court for the appointment of one or more persons to serve as family masters." Miss. Code Ann. § 9-5-255(1) (Rev. 2019). The chief justice will appoint a family master if he determines one is needed to help resolve a district's "crowded" docket. *Id*. "Family masters in chancery shall have the power to hear cases and recommend orders establishing, modifying and enforcing orders for support in matters referred to them by chancellors and judges of the circuit, county or family courts of such county." *Id*. § 9-5-255(2). Special masters and family masters both serve as judicial officers of the court in a judicial function. Both masters act as judges according to the powers afforded by the appointment.

¶17.     "Mississippi has long recognized the doctrine of judicial immunity." *Weill v. Bailey*, 227 So. 3d 931, 935 (¶18) (Miss. 2017) (quoting *Wheeler v. Stewart*, 798 So. 2d 386, 392 (¶14) (Miss. 2001)). Judicial immunity exists if at the time the judge took action, he had "jurisdiction over the subject matter before him." *Pryer v. Gardner*, 247 So. 3d 1245, 1251

him as a "family master." While the role of masters may differ depending on the appointing order, for purposes for the legal issue before this Court, it is a distinction without a difference. In either case, whether appointed pursuant to Rule 53 or by section 9-5-255, the master was performing judicial duties referred to him by the judge making the appointment.

9

(¶10) (Miss. 2018). If a judge had jurisdiction over the subject matter before him at the time he took action, he will be judicially immune. *See Newsome v. Shoemake*, 234 So. 3d 1215, 1226 (¶39) (Miss. 2017) (finding that two judges were immune from suit because "at the time the alleged acts giving rise to Newsome's claims occurred, both chancellors exercised jurisdiction over the subject matter of the conservatorship" before them). The Mississippi Supreme Court recognizes "that the best interests of the people and public order require that judges be immune from civil liability." *Id.* (quoting *Loyacono v. Ellis*, 571 So. 2d 237, 238 (Miss 1990)).

¶18. Yelton was acting in his capacity as a master in Panola County and within the court's jurisdiction when he denied Jackson's requests to order his ex-wife to "return to her maiden name" and to uphold the child support agreement for Jackson to pay Linda directly each month. Yelton, as a master handling a legal issue in Jackson's divorce, was performing legal duties similarly done by chancery court judges in this State. The same law and same public policy affording judicial immunity to a chancery court judge applies with equal clarity and purpose to a special master or a family master. As a duly appointed chancery court master, Yelton was judicially immune from Jackson's lawsuit.

## CONCLUSION

¶19. Upon review of the record, this Court affirms the trial court's orders dismissing Jackson's claims.

¶20. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, McCARTY, SMITH AND EMFINGER, JJ.,**

**CONCUR.**